**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David Alexander ROWLETT, Defendant–Appellant.**

**No. 93–2228.**

United States Court of Appeals, Tenth Circuit.

April 29, 1994.

---

Angela Arellanes, Albuquerque, NM, for defendant-appellant.

John J. Kelly, U.S. Atty., and Robert J. Gorence, Asst. U.S. Atty., Albuquerque, NM, for plaintiff-appellee, on the brief.*

Before: ANDERSON and HOLLOWAY, Circuit Judges, and OWEN,** District Judge.

HOLLOWAY, Circuit Judge.

Defendant/appellant David A. Rowlett appeals his sentence for making a false statement in the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6). Rowlett contends the district court erred in making a two-level upward adjustment in his base offense level under U.S.S.G. § 2K2.1(b)(4) for the alleged involvement of a stolen firearm in the underlying offense, and an additional two-level enhancement under U.S.S.G. § 3C1.1 for alleged willful obstruction of justice. While the district court properly enhanced Rowlett's sentence for obstruction of justice under U.S.S.G. § 3C1.1, it erred in doing so under § 2K2.1(b)(4) for the involvement of a stolen firearm. We therefore vacate the sentence and remand for resentencing consistent with this opinion.

I

Starting in March 1992, Rowlett became associated with David Holly, a federal fugitive involved in the manufacture and sale of

---

* The government submitted its position on the brief without argument.

** The Honorable Richard Owen, United States District Judge for the Southern District of New York, sitting by designation.

false identification documents and payroll and bank checks, and the acquisition of firearms by means of counterfeit checks. PSR ¶¶ 19–20. At the time, Holly was residing with his girlfriend Elke Mikaelian in Albuquerque, New Mexico, using her home as the center for his illicit operation. *Id.* Beginning in November 1992, Holly also got involved in the manufacture of counterfeit federal reserve notes. *Id.* ¶ 21.

On December 22, 1992, Rowlett obtained a Winchester, Model 1300 Stainless Marine 12–gauge shotgun from Oshman's Sporting Goods in Albuquerque, using a Holly-made fictitious driver's license and counterfeit check in the amount of $407.55. *Id.* at ¶ 25. Rowlett falsified the ATF Form 4473 filled out in connection with the transaction. *Id.* Subsequently, during December 1992 and January 1993, Rowlett, Holly, and a third collaborator, Margaret Banks, purchased at least three additional firearms, using counterfeit checks and fictitious identification. *Id.* at ¶ 34. On January 22, 1993, as part of a police sting operation, undercover officers set up a meeting to purchase $40,000 in counterfeit currency from Holly at a hotel in Albuquerque. *Id.* at ¶¶ 39–40. The encounter resulted in the shooting death of Holly and the momentary escape of his collaborators. *Id.* ¶¶ 42–43.

The next morning, Rowlett called Holly's girlfriend, Elke Mikaelian, and told her to remove "everything belonging to Holly" from her house and "throw it in the arroyo if you have to, but get it out of the house." *Id.* ¶ 55. Later the same day, police executed a search warrant on Ms. Mikaelian's house. When they arrived, they found burned fragments of suspected counterfeit currency in the fireplace and discarded papers and cut-up photographs in various trash bags. *Id.*

Following his subsequent arrest, Rowlett was indicted on February 3, 1993, for providing a false statement in the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6),[1]

interstate transportation of a stolen firearm in violation of 18 U.S.C. § 922(j), and conspiracy to utter counterfeit obligations and make and possess forged bank securities in violation of 18 U.S.C. § 371. On May 14, 1993, Rowlett pled guilty to providing a false statement in the acquisition of a firearm at Oshman's Sporting Goods in Albuquerque on or about December 22, 1992, in violation of § 922(a)(6). The government in turn agreed to dismiss the remaining charges against him. The judge entered an order filed August 13, 1993, dismissing the indictment. IR. Doc.165. An information charging only the false statement offense was filed, and it was this charge to which Rowlett pled guilty.

On August 6, 1993, the district judge sentenced Rowlett to 21 months' imprisonment, to be followed by three years' supervised release. II R. 8. Adopting the factual findings and guideline applications of the presentence report, the judge arrived at an adjusted offense level of 14. II R. 8. Starting with a base offense level of 12, as provided in U.S.S.G. § 2K2.1(a)(7), the judge made a one-level upward adjustment under § 2K2.1(b)(1) based on the involvement of three or more firearms in the offense, a two-level upward adjustment under § 2K2.1(b)(4) based on his finding that the firearms had been "stolen by way of fraud," a two-level upward adjustment under § 3C1.1 based on his finding that Rowlett had willfully sought to obstruct justice by instructing Ms. Mikaelian to remove Holly's belongings, and a three-level downward adjustment based on Rowlett's acceptance of responsibility. The judge found that there was no need for an evidentiary hearing since there were no disputed facts. *Id.* at 7–8. With respect to the upward adjustments under §§ 2K2.1(b)(4) and 3C1.1, which are the subject of this appeal, the judge stated:

> Number 1: The defendant David Alexander Rowlett illegally acquired a Win-

---

1. Section 922(a)(6) makes it unlawful

   for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false to [sic] fictitious oral or written statement or to

   furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

chester Model 1300 Stainless Marine 12–gauge shotgun on December 22nd, 199[2], by way of fraud in that he presented a fictitious New Mexico driver's license bearing the name "Angus McLeod" and paid for the shotgun using a counterfeit check in the amount of $407.55, which he knew or had reason to know was counterfeit. The firearm is considered stolen by way of fraud at the time of the instant offense in [sic] Section 2K2.1(b)(4) of the sentencing guidelines as [sic] found to be applicable, warranting a two-offense level increase.

Number 2: Facts in the instant offense reflect that the counterfeit driver's license and checks were manufactured at the home of Elke Mikaelian, as directed by David Holly. The defendant David Alexander Rowlett, upon learning of the death of David Holly, contacted Elke Mikaelian. By his own admission, defendant advised Elke Mikaelian to remove everything of David Holly's from the house, thereby directing her to destroy or conceal material evidence in the investigation. Therefore, the two-offense level increase as applied in the presentence report is found to be warranted for obstruction of justice as considered in Section 3C1.1, Application Note III(d) [sic], of the Sentencing Guidelines.
*Id.*

Based on Rowlett's criminal history category of 1, the judge arrived at a guideline imprisonment range of 15–21 months. *Id.* at 8. The judge proceeded to sentence Rowlett to the high end of the range, 21 months, to be followed by three years of supervised release. *Id.* A special assessment of $50.00 was also imposed.

## II

■ On appeal Rowlett contends, first, that the district court erred in finding that because he acquired the Winchester shotgun from Oshman's "by way of fraud", the weapon was "stolen" within the meaning of § 2K2.1(b)(4), requiring an increase of two in the offense level. Second, Rowlett argues that the court erred in finding that his instruction to Elke Mikaelian to dispose of all items belonging to David Holly amounted to obstruction of justice, or attempted obstruc-

tion of justice, within the meaning of § 3C1.1. In deciding these disputed sentencing issues, "we review the district court's supporting factual findings under the clearly erroneous standard, and review disputed legal issues de novo." *United States v. Levy,* 992 F.2d 1081, 1083 (10th Cir.1993). "[T]he district court's application of the Sentencing Guidelines to the facts of a particular case is entitled to due deference[.]" *United States v. Urbanek,* 930 F.2d 1512, 1515 (10th Cir.1991).

### A

■ U.S.S.G. § 2K2.1(b)(4) provides for a two-level upward adjustment "[i]f any firearm was stolen, or had an altered or obliterated serial number[.]" Applying this provision, the district court concluded that the shotgun acquired by Rowlett was "stolen" within the meaning of § 2K2.1(b)(4) because it was fraudulently acquired by means of a fictitious driver's license and a counterfeit check. II R. 7.

One part of Rowlett's objection below to the increase in the offense level under U.S.S.G. § 2K2.1(b)(4) was that a gun is not "stolen" just because a counterfeit check is passed to the gun dealer, II R. 8, and a similar argument is made on appeal by Rowlett as part of his challenge to the application of the Guideline. Appellant's Brief in Chief at 5–6 & n. 1. We are not persuaded by Rowlett's argument that the term "stolen" in the Guideline provision does not include a weapon obtained by a fraudulent transaction. No persuasive authority is cited for this restrictive interpretation by Rowlett and we find none. Cases which he cites, Appellant's Brief in Chief at 6 n. 1, deal with other issues, not the argument which Rowlett makes here. In other contexts the term "stolen" has been held to include "all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." *United States v. Turley,* 352 U.S. 407, 417, 77 S.Ct. 397, 402, 1 L.Ed.2d 430 (1957) (construing the Dyer Act, 18 U.S.C. § 2312). *See also McCarthy v. United States,* 403 F.2d 935, 938 (10th Cir.1968) (same). We likewise reject this first argument by Rowlett against

the application of § 2K2.1(b)(4). We believe that the term "stolen" in the Guideline provision could apply if the firearm had been obtained by fraudulent means before the commission of the instant offense.

We now turn to the significance of the timing when the weapon became a "stolen" firearm. Defendant argues that it was error to hold that the shotgun was "stolen" within the meaning of § 2K2.1(b)(4) because the Guideline focuses on the existing condition of the firearm as stolen property; it does not say "if the firearm is being stolen by fraud or forgery." Appellant's Brief in Chief at 7.[2] However, the district judge here read the term "stolen" to mean not the existing condition of the firearm at the time of the offense in question (*i.e.*, whether it *was* a stolen weapon or *"had"* an altered or obliterated serial number") (emphasis added), but instead to mean the weapon's condition after the consummation of the instant offense which transformed the weapon into being a stolen firearm. While the court's interpretation may seem possible upon an isolated reading of the term "stolen", it ignores the meaning made clear by the context in which the term appears:

> Language, of course, cannot be interpreted apart from context. The meaning of a word that appears ambiguous if viewed in isolation may become clear when the word is analyzed in light of the terms that surround it.

> \* \* \* \* \* \*

Just as a single word cannot be read in isolation, nor can a single provision of a statute. As we have recognized:

> "Statutory construction ... is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *Unit-*

*ed Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) (citations omitted).

*Smith v. United States,* —— U.S. ——, ——, ——, 113 S.Ct. 2050, 2054, 2056, 124 L.Ed.2d 138 (1993). *Accord United States Nat. Bank of Oregon v. Independent Ins. Agents,* —— U.S. ——, ——, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) ("Over and over we have stressed that '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'") (quoting *United States v. Heirs of Boisdore,* 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1849)); *Deal v. United States,* —— U.S. ——, ——, 113 S.Ct. 1993, 1996, 124 L.Ed.2d 44 (1993) ("the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used"; "all but one of [several possible] meanings is ordinarily eliminated by context").

The context in which the term "stolen" appears precludes the interpretation adopted by the district court. In its entirety, § 2K2.1(b)(4) reads: "If any firearm *was* stolen, *or had* an altered or obliterated serial number, increase by 2 levels." (Emphasis added.) As the underlined language shows, the Guidelines provision is concerned not with the way in which firearms and ammunition are acquired by a particular defendant, but rather with their condition when acquired, by whatever means.

The foregoing reading of § 2K2.1(b)(4) is confirmed by the accompanying Guidelines Commentary. Specifically, Application Note 12 states that the two-level enhancement provided in subsection (b)(4) should not be applied where the only underlying conviction is for an "offense[ ] involving stolen firearms or ammunition" (18 U.S.C. § 922(i)-(k), 26 U.S.C. § 5861(g)-(h)), because in such cases *"the base offense level itself takes such conduct into account."* (Emphasis added.) The relevant context and the Guideline Commentary thus leave no doubt that the Guideline

---

**2.** Defendant's Sentencing Memorandum and Objections to the Presentence Report, page 5, argued below that the Guideline makes § 2K1.1(b)(4) apply "[i]f firearm *was stolen,*"

(emphasis added in Sentencing Memorandum); that the Guideline's wording is not "if the firearm is subsequently deemed stolen, or if the firearm is being stolen." *Id.*

term "stolen" refers to the preexisting condition of the relevant firearms and ammunition involved in a crime, not the manner in which they are acquired in committing the offense.[3]

In short, in light of the wording and purpose of § 2K1.1(b)(4), the district court erred in applying a two-level increase in Rowlett's offense level under that Guideline provision.

### B

U.S.S.G. § 3C1.1 provides for a two-level upward adjustment of the offense level "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense...." Rowlett argues that his telephone call to Elke Mikaelian, in the wake of Holly's death, instructing her to remove Holly's belongings from her house did not constitute actual or attempted obstruction of justice within the meaning of § 3C1.1.[4]

■ Rowlett's first argument on this enhancement is that his conduct could not serve as the basis for an obstruction of justice increase in offense level because, he says, it did not relate to the investigation into his underlying offense of conviction (making a false statement in the acquisition of a firearm), but only to the investigation of Holly's criminal activity. Rowlett relies on *United States v. Levy*, 992 F.2d 1081 (10th Cir.1993), holding that "[t]he conduct relied on to support an obstruction of justice enhancement must relate to the crime of conviction." *Id.* at 1084.

Our *Levy* opinion does not preclude the application of § 3C1.1 here. While Rowlett's instructions to remove evidence may not have been aimed solely at destroying or concealing evidence pertaining to his own crime of conviction, they nonetheless related to his crime within the meaning of *Levy*. Rowlett's offense was facilitated by the use of a Holly-made false driver's license and counterfeit check and, therefore, was inextricably linked to Holly's criminal enterprise. Portions of the evidence pertaining to Holly's activities thus would have been probative of Rowlett's offense of conviction. It follows that Rowlett's obstructive conduct related not only to Holly's illegal scheme but also to his own offense of conviction.

■ Rowlett's second argument is that application of Guideline § 3C1.1 is precluded by the district court's finding, in connection with Ms. Mikaelian's sentencing, that "[a]lthough evidence appears to have been separated by Elke Mikaelian, the actions did not represent a material hindrance to the investigation." V R. 5. In support of this contention, Rowlett cites *United States v. Robinson*, 978 F.2d 1554, 1566 (10th Cir.1992), *cert. denied sub nom.* —— U.S. ——, 113 S.Ct. 1855, 123 L.Ed.2d 478 (1993), *and cert. denied sub nom.* —— U.S. ——, 113 S.Ct. 2938, 124 L.Ed.2d 687 (1993), and *United States v. Urbanek*, 930 F.2d 1512, 1514–15 (10th Cir. 1991), where we held that false statements to investigators did not form the basis for an obstruction of justice enhancement if the statements did not "significantly impede or obstruct the investigation." *Robinson*, 978 F.2d at 1566 (quoting *Urbanek*, 930 F.2d at 1515).[5]

**3.** Were we to find in this context, and we do not, that the term "stolen" is nonetheless ambiguous, this ambiguity would have to be resolved in Rowlett's favor under the rule of lenity. *United States v. Granderson*, —— U.S. ——, ——, 114 S.Ct. 1259, 1262, 127 L.Ed.2d 611 (1994) (applying the rule of lenity and resolving the ambiguity in a sentencing provision in defendant's favor).

**4.** There is no factual dispute about defendant Rowlett's actions in this regard. In his "Sentencing Memorandum and Objections to the Presentence Report," page 3, it is stated that: "Rowlett admitted [in an interview with Secret Service Agents] that he called Elke Mikaelian Saturday morning, January 23, 1993, and advised Elke to

remove 'everything belonging to Holly' from her house. Rowlett called Elke Mikaelian again the afternoon of January 23, 1993. Elke advised Rowlett that she had removed everything. The gist of Rowlett's argument on this issue is that his conduct did not amount to actual or attempted obstruction of justice, as discussed in the text.

**5.** More recently, we have upheld an obstruction of justice increase in criminal offense level in *United States v. Flores–Flores*, 5 F.3d 1365 (10th Cir.1993), based on misstatements during an INS interview during the defendant's detention following his arrest for an unrelated crime. We held that the defendant there had "provided misinformation and incomplete information, material to the presentencing investigation of his

Rowlett's reliance on *Robinson* and *Urbanek* is unwarranted. Our conclusion in both cases rested on the fact that the underlying conduct was limited to false statements to government investigators. Under U.S.S.G. § 3C1.1, Application Note 3(g), the obstruction of justice enhancement cannot be founded on such statements to a law enforcement officer unless the statements "significantly obstructed or impeded the official investigation or prosecution of the instant offense." *See Robinson,* 978 F.2d at 1566; *Urbanek,* 930 F.2d at 1514. Here, however, Rowlett's obstructive conduct did not consist of making false statements to law enforcement officers but, rather, an attempt to conceal evidence by telling Ms. Mikaelian to do so. Accordingly, neither *Robinson* nor *Urbanek* supports Rowlett's position. Instead, this case is governed by Application Note 3(d) which states in part:

> The following is a non-exhaustive list of the types of conduct to which this [obstruction of justice] enhancement applies:
>
>     *     \*     \*     \*     \*     \**
>
> (d) destroying or concealing or *directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (e.g.,* shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), *or attempting to do so;* however, if such conduct occurred contemporaneously with arrest (*e.g.,* attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender.

(Emphasis added.)

 Under the foregoing Guidelines provision, an obstruction of justice enhancement may be made where a defendant conceals or destroys evidence, or procures such concealment or destruction, regardless of whether actual hindrance to an official investigation or prosecution results. Only where such conduct "occurred contemporaneously with arrest" does the enhancement hinge on whether "it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender." Application Note 3(d).

Rowlett's instructions to Ms. Mikaelian to remove evidence did not take place contemporaneously with his arrest. The district court therefore did not err in making a two-level upward adjustment in Rowlett's offense level for obstruction of justice under § 3C1.1, notwithstanding the apparent lack of any showing of material hindrance to the criminal investigation, prosecution, or sentencing of the offender.

### III

While we find no error in the obstruction of justice enhancement, we hold that the two-level increase in Rowlett's offense level based on U.S.S.G. § 2K2.1(b)(4) was error. Accordingly, Rowlett's sentence is **VACATED** and the case is **REMANDED** for resentencing consistent with this opinion.

---

case." *Id.* at 1369. We noted that "materiality under these facts is determined based on whether the defendant's conduct was *sufficient* to impede the investigation, not whether it was *successful* in that goal." *Id.* at 1368 (citing U.S.S.G. § 3C1.1 comment (n. 5) (emphasis in original). And we noted that it "was necessary for federal investigators to expend considerable effort and resources to fill in and correct the incomplete and misleading information." *Id.* at 1369.