**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 97-50318

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

LORAN BRUCE PIERSON,

Defendant-Appellant.

---

Appeals from the United States District Court
For the Western District of Texas

---

April 17, 1998

Before DAVIS, WIENER, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

The defendant, Loran Bruce Pierson, appeals from a conviction of mailing a destructive device with intent to kill or injure in violation of 18 U.S.C. § 1716; use of a destructive device during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1); and possession of a firearm, which had moved in interstate commerce, by a person subject to a protective order prohibiting family violence in violation of 18 U.S.C. § 922(g)(8). The defendant challenges his conviction claiming that the district court erred, *inter alia*, by holding 18 U.S.C. § 922(g)(8)

constitutional. After considering the issues raised by the defendant on appeal, we affirm.

I.

Prior to the dissolution of their marriage, the defendant committed family violence against his wife, Rebecca Roland, and her daughter. After Pierson physically assaulted Roland's daughter with his crutch, Roland informed Pierson that she was leaving him. The defendant replied that he would kill Roland if she left him. Thereafter, Roland and her daughter moved into a trailer located 200 feet from the defendant's home. While Roland and her daughter were living in the trailer, Pierson continued to verbally abuse Roland and would shoot a firearm in the direction of the trailer in order to get Roland's attention.

On September 5, 1995, Roland obtained a protective order because Pierson was stalking her. The protective order provided that Pierson had committed or threatened family violence and that family violence was likely to occur in the foreseeable future. The protective order directed Pierson not to commit family violence against Roland and her daughter, not to communicate with Roland and her daughter in an abusive or threatening manner, and to stay at least 200 feet away from Roland and her daughter.

On September 21, 1995, the United States Postal Service delivered a package to the Leon County Office of Community Supervision and Correction, located in Centerville, Texas, bearing

the notation, "Attention Rebbecca [sic]."[1]  Roland worked at the Leon County office as a clerical employee whose duties included opening and sorting the office mail.  The package had been mailed from Dallas on September 20, 1995.  After opening the package, Roland could not remove the contents of the package, so she asked Community Supervision Officer James Robeson to assist her.  Robeson shook the parcel until several pieces of cardboard and a metal box fell out of the package.[2]  Upon opening the metal box, Robeson discovered two metal pipes, wires, and batteries.  Robeson then yelled "bomb, bomb" and ordered everyone to evacuate the building.

An ordinance team from the United States Army responded to the attempted bombing.  After determining that the metal box contained a potentially live bomb, the team rendered the device safe by placing the box in a protective bunker and firing a .50 caliber round through each of the pipes, causing the pipes to detonate.  After the ordinance team detonated the device, agents from the ATF collected the debris, including fragments of the pipes, switches, batteries, wires, tape and remnants of epoxy.  An explosives expert with the U.S. Department of Treasury determined that the debris came from an "explosive device" or "destructive device."

---

[1] At trial, Roland testified that Pierson often misspelled her name "Rebbecca."

[2] A fingerprint expert with the U.S. Postal Service, Scott Peters, examined the cardboard inserts packaged with the bomb and found Roland's palm and finger prints.  Robeson and Roland testified that Roland did not touch the cardboard inserts when they were removing the metal box from the parcel.  Roland also testified that the cardboard inserts looked like a cardboard box that had been in her home.

After law enforcement officers learned of the protective order obtained by Roland, the investigation focused on Pierson as a possible suspect in the attempted bombing. Investigators secured a search warrant for Pierson's home. As agents approached the home to execute the warrant, Pierson asked if anything had happened to his wife. Agents seized a Sturm Ruger rifle and Marlin shotgun from Pierson's home. In later searches, the agents seized the contents of a vacuum cleaner, a laptop computer, a Packard Bell computer and printer, several rolls of tape, and hair samples from Pierson. Forensic experts from the U.S. Postal Service determined that the evidence collected from the bomb site was consistent with certain evidence collected from Pierson's residence.

In a three count indictment, Pierson was charged with mailing a destructive device with intent to kill or injure in violation of 18 U.S.C. § 1716 (count one); use of a destructive device during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(count two); and possession of a firearm, which had moved in or affected interstate commerce, by a person subject to a protective order prohibiting family violence in violation of 18 U.S.C. § 922(g)(8)(count three). Following a jury trial, Pierson was convicted of all three counts. The district court sentenced the defendant to ninety-seven months for count one, thirty years for count two, and ninety-seven months for count three. The terms of imprisonment for counts one and three are to be served concurrently with each other and consecutively with count two.

II.

The defendant contends that 18 U.S.C. § 922(g)(8) is an unconstitutional exercise of congressional power that violates the principles enunciated in *United States v. Lopez*, __ U.S.__, 115 S.Ct. 1624 (1995). Specifically, Pierson argues that possession of a firearm while subject to a protective order prohibiting domestic violence does not substantially affect interstate commerce. The district court, however, upheld the constitutionality of the statute by denying the defendant's Motion to Dismiss the Indictment. In reviewing constitutional challenges to federal statutes, we apply a de novo standard of review. *See United States v. Bailey*, 115 F.3d 1222, 1225 (5th Cir. 1997).

In *United States v. Lopez*, the Court held that a related statutory prohibition outlawing the possession of a gun in a school zone, 18 U.S.C. § 922(q), was unconstitutional under the Commerce clause. *See United States v. Lopez*, __ U.S. __, 115 S.Ct. 1624, 1629-34 (1995). The Court identified the following three broad areas of activity over which Congress may constitutionally exercise its commerce power: (1) Congress may regulate the use of the channels of interstate commerce; (2) Congress may regulate and protect the instrumentalities of, or persons or things in interstate commerce; and (3) Congress may regulate activities substantially affecting interstate commerce. *Id.* at 1629. In holding § 922(q) unconstitutional, the Court determined that the intrastate possession of a firearm, without more, could not be regulated as a channel or instrumentality of interstate commerce,

or a person or thing in interstate commerce.  *See Lopez*, 115 U.S. at 1630.  Thus, the intrastate possession of a firearm could only be prohibited under the Commerce Clause if such possession had a substantial effect on interstate commerce.  *Id.*  The Court noted that § 922(q) was a criminal statute that had nothing to do with commerce or any sort of commercial enterprise and was "not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated."  *Id.* at 1630-31.  Therefore, the Court held that the intrastate possession of a firearm in a school zone did not substantially affect interstate commerce, and as such, could not be prohibited under the commerce power.  Central to the *Lopez* Court's holding was the fact that § 922(q) contained "no jurisdictional element which would ensure, through a case-by-case inquiry, that the firearm possession in question affects interstate commerce."  *See Lopez*, 115 S.Ct. at 1631.  *See also United States v. Rawls*, 85 F.3d 240, 242 (5th Cir. 1996)(upholding the constitutionality of § 922(g)(1)).

Unlike § 922(q), § 922(g)(8) contains a jurisdictional element.  Section 922(g)(8) forbids any person subject to a protective order prohibiting family violence "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(8).  By expressly requiring a nexus between the illegal firearm and interstate commerce,

6

Congress has exercised its delegated power under the Commerce Clause to reach "a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Lopez,* 115 S.Ct. at 1631. We have upheld the constitutionality of a similar statutory provision forbidding the possession of a firearm by a convicted felon, 18 U.S.C. § 922 (g)(1), which includes the exact same jurisdictional element. *See United States v. Rawls*, 85 F.3d 240, 242 (5th Cir. 1996); *United States v. Wallace*, 889 F.2d 580, 583 (5th Cir. 1989). As we recognized in *Wallace,* "[T]he words 'affecting commerce' are jurisdictional words of art, typically signaling a congressional intent to exercise its Commerce Clause power broadly, perhaps as far as the Constitution permits." Our decisions in *Rawls* and *Wallace* necessitate the same result for § 922(g)(8). As such, we hold that "neither the holding in *Lopez* nor the reasons given therefor constitutionally invalidate" § 922(g)(8). *See Rawls,* 85 F.3d at 242.

Additionally, Pierson contends that § 922(g)(8) is unconstitutional as applied to him. Specifically, Pierson asserts that the firearms which he possessed did not affect and were not possessed in commerce. As this court has previously held, the "in or affecting" commerce element can be satisfied if the illegally possessed firearm had previously traveled in interstate commerce. *See Rawls*, 85 F.3d at 242(citing *Scarborough v. United States*, 431 U.S. 563, 575 (1977)). The Sturm Ruger rifle was manufactured in Connecticut and the Marlin shotgun was manufactured in New

7

Hampshire.  Thus, the firearms had to travel in interstate commerce in order for Pierson to possess them in Texas.  As we have previously noted, evidence that a gun was manufactured in one state and possessed in another state is sufficient to establish a past connection between the firearm and interstate commerce.  *See Rawls*, 85 F.3d at 243; *Wallace,* 889 F.2d at 584. *See also Scarborough,* 431 U.S. at 575 (concluding that Congress did not intend to require any more than the minimal nexus that at some time the firearm had been in interstate commerce).  Consequently, we hold that § 922(g)(8) is not unconstitutional as applied to Pierson.

## III.

Additionally, the defendant challenges his conviction by asserting that the government failed to produce evidence sufficient to support the conviction, that he received the ineffective assistance of counsel, and that the court erred by failing to grant the defendant's Motion for Severance of count three from counts one and two.  After considering the legal arguments raised by the parties in their briefs to this court, we are satisfied that no reversible error occurred.  For the foregoing reasons, the decision of the district court is

AFFIRMED.