Revised February 1, 1999

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 97-41265
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NORBERTO B. LUNA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

January 15, 1999

Before POLITZ, Chief Judge, WIENER, and DENNIS, Circuit Judges.

WIENER, Circuit Judge:

Defendant, Norberto B. Luna appeals his sentence of eighty-four months in prison for knowingly possessing stolen firearms, in violation of 18 U.S.C. § 922(j). Luna challenges the district court's application of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") and the constitutionality of § 922(j). Finding no reversible error, we affirm.

I.

FACTS AND PROCEEDINGS

In August of 1996, Luna and two others burglarized a residence in Corpus Christi, Texas, and stole five firearms. Luna was

subsequently arrested and charged in a single count indictment with knowingly possessing five stolen firearms that had been shipped and transported in interstate commerce, in violation if 18 U.S.C. § 922(j).[1] Luna filed a pre-trial motion to dismiss the indictment, arguing that § 922(j) was an unconstitutional exercise of the power of Congress under the Commerce Clause. The district court orally denied the motion, and the case proceeded to trial. As Luna waived trial by jury, he was tried by the court. Based on a written stipulation of facts, the district court found Luna guilty of possession of stolen firearms.

A presentence report ("PSR") was prepared by a probation officer who assigned Luna a base offense level of twenty pursuant to U.S.S.G. § 2K2.1(a)(4)(A) because Luna had a state conviction for burglary of a habitation. Additionally, Luna received a total of eight specific offense enhancements because (1) the offense involved at least five firearms (§ 2K2.1(b)(1)(B)), (2) the firearms were stolen (§ 2K2.1(b)(4)), and (3) the firearms were possessed in connection with another felony offense — the burglary (§ 2K2.1(b)(5)). Luna's offense level was reduced three levels for acceptance of responsibility. His resulting net offense level was

---

[1] Section 922(j) provides: "It shall be unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm . . . which is moving as, which is part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, either before or after it was stolen, knowing or having reasonable cause to believe that the firearm . . . was stolen." 18 U.S.C. § 922(j) (1994).

twenty-five. This offense level and Luna's criminal history yielded a sentence range of 84 to 105 months imprisonment.

Prior to sentencing, Luna filed objections to the PSR, which the district court ultimately denied. Luna argued that (1) the enhancements under both §§ 2K2.1(b)(4) and (b)(5) constituted impermissible double counting; (2) the application of § 2K2.1(b)(4) was inappropriate because the firearms were not "stolen" prior to the time that he removed them from the residence; and (3) determination of his base offense level under § 2K2.1(a)(4)(A) was incorrect because his earlier state conviction for burglary was not a prior qualifying conviction. Finding Luna's objections to be meritless, the district court sentenced him to a term of eighty-four months, followed by three years of supervised release.[2]

In this appeal, Luna reiterates his objections to the PSR, and again challenges the constitutionality of § 922(j) — the statute under which he was convicted. As he argued in his motion to dismiss the indictment, Luna asserts that § 922(j) is an unconstitutional exercise of the power of Congress under the Commerce Clause. Luna contends that both facially and as applied to him, the statute exceeds the authority of Congress under the Commerce Clause because the conveyance of a firearm over state lines at some unspecified point in the past does not substantially

---

[2]The district court also imposed a $100 special assessment and ordered Luna to provide restitution to the victim of the crime.

3

affect commerce.  We begin by addressing the constitutionality of the statute and then consider Luna's challenges to his sentence under the Guidelines.

## II.

## ANALYSIS

A.   CONSTITUTIONALITY OF 18 U.S.C. § 922(j)

### 1.   Standard of Review

In evaluating a constitutional challenge to a federal statute, we apply a de novo standard of review.[3]

### 2.   Facial Challenge

Luna contends that on its face 18 U.S.C. § 922(j) is an unconstitutional exercise of the power of Congress under the Commerce Clause.  Section 922(j) makes it unlawful for any person to "receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm . . . which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce."[4]  Relying on the Supreme Court's

---

[3]United States v. Pierson, 139 F.3d 501, 503 (5th Cir.), cert. denied, 1998 WL 423916 (U.S. Oct. 5, 1998);  United States v. Rasco, 123 F.3d 222, 226 (5th Cir. 1997), cert. denied, 118 S.Ct. 868 (1998).

[4]18 U.S.C. § 922(j).

decision in United States v. Lopez,[5] Luna argues that the mere possession of a stolen firearm that has crossed state lines in the past does not substantially affect interstate commerce, thereby falling outside the realm of activities that Congress can regulate under the commerce power. The district court rejected this argument when it denied Luna's motion to dismiss the indictment.

We have not previously been required to address the constitutionality of § 922(j). In fact, the only federal appellate court to rule on the constitutionality of § 922(j) so far is the Eighth Circuit, which did so in an unpublished opinion. In United States v. Kocourek,[6] that court upheld the constitutionality of § 922(j) in the face of a Commerce Clause challenge, based on the section's plain language that established the interstate commerce link —— "shipped or transported in, interstate or foreign commerce."[7] The Kocourek court relied on its examination of 18 U.S.C. § 922(g), a statute containing virtually identical language to that of § 922(j), to ensure that the firearm in question sufficiently affected interstate commerce.[8] We agree with our colleagues in the Eighth Circuit and likewise hold that § 922(j) is

_____

[5]514 U.S. 549 (1995).

[6]116 F.3d 481 (8th Cir. 1997) (unpublished).

[7]See 18 U.S.C. § 922(j).

[8]Kocourek, 116 F.3d at 481 (citing United States v. Shelton, 66 F.3d 991, 992 (8th Cir. 1995) (per curiam) (concluding that § 922(g) contains the interstate commerce requirement), cert. denied, 517 U.S. 1125 (1996)).

a constitutional exercise of Congress's commerce power.

To properly define the boundaries of Congress's power to regulate activities involving firearms — specifically stolen firearms — we begin with a discussion of the Supreme Court's <u>Lopez</u> opinion. In <u>Lopez</u>, the Court examined 18 U.S.C. § 922(q), which prohibits the possession of a firearm within a designated school zone. The Court identified "three broad categories" of activity over which Congress could constitutionally exercise its commerce power: (1) the use of the channels of interstate commerce; (2) the instrumentalities of, or persons or things in, interstate commerce; and (3) activities substantially affecting interstate commerce.[9] Analyzing § 922(q) within this framework, the Court first dismissed the possibility that intrastate possession of firearms could fit into the first two categories, and turned instead to the third category — whether the intrastate possession of firearms could substantially affect interstate commerce.[10] In holding § 922(q) unconstitutional, the Court noted that, as a criminal statute, § 922(q) had nothing to do with commercial enterprise nor was it an essential part of a larger regulation of economic activity, and thus did not substantially affect commerce. Central to this holding was the lack of a "jurisdictional element which would ensure, through a case-by-case inquiry, that the

---

[9]<u>Lopez</u>, 514 U.S. at 558-59.

[10]<u>Id.</u> at 559.

firearm possession in question affects interstate commerce."[11]

Unlike § 922(q), § 922(j) does contain a jurisdictional element. It specifically prohibits possession of a stolen firearm "which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce."[12] Luna argues that the jurisdictional element in § 922(j) is broadly worded, and such "clever legislative craftwork" cannot shield the statute from constitutional attack.[13] Section 922(j), however, contains language virtually identical to that of §§ 922(g)(1) and (g)(8), related provisions in the federal firearms statute that we have held constitutional in the face of post-Lopez Commerce Clause challenges.[14]

For example, we have upheld, on several occasions, the

---

[11]Id. at 561.

[12]18 U.S.C. § 922(j).

[13]See United States v. Chesney, 86 F.3d 564, 579 (6th Cir. 1996) (Batchelder, J., concurring) ("A statute that regulates non-commercial activity cannot be converted into a statute that regulates commercial activity by dint of clever legislative craftwork."), cert. denied, 117 S.Ct. 2470 (1997).

[14]See infra note 15 and accompanying text; Pierson, 139 F.3d at 503 (§ 922(g)(8) governs possession of firearms by individuals subject to protective orders in family violence cases); see also United States v. Hardy, 120 F.3d 76, 79 (7th Cir. 1997) (finding § 922(u) constitutional); United States v. Snow, 82 F.3d 935, 939 (10th Cir. 1996) (same); United States v. Miller, 74 F.3d 159, 159-60 (8th Cir. 1996) (same); United States v. Hernandez, 85 F.3d 1023, 1031 (2nd Cir. 1996) (finding § 922(k) constitutional); United States v. Diaz-Martinez, 71 F.3d 946, 953 (1st Cir. 1995) (same).

constitutionality of § 922(g)(1)[15] — the felon-in-possession statute — based in large part on the jurisdictional nexus expressed in the plain language.[16] Section 922(g)(1) makes it unlawful for a convicted felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm . . . or to receive any firearm . . . which has been

---

[15]United States v. Rawls, 85 F.3d 240, 242 (5th Cir. 1996) (finding that the holding in Lopez does not invalidate the constitutionality of § 922(g)(1));  United States v. Gresham, 118 F.3d 258, 264 (5th Cir. 1997) (reaffirming Rawls), cert. denied, 118 S.Ct. 702 (1998);  United States v. Kuban, 94 F.3d 971, 973 (5th Cir. 1996) (same), cert. denied, 117 S.Ct. 716 (1997); United States v. Dickey, 102 F.3d 157, 163 (5th Cir. 1996) (same).  We note that every other circuit that has addressed this issue has upheld the constitutionality of § 922(g)(1).  See United States v. Williams, 128 F.3d 1128 (7th Cir. 1997) (referencing decisions from each circuit court).

[16]The cases interpreting § 922(g)(1) cite Scarborough v. United States, 431 U.S. 563 (1977), as binding precedent, a case which concluded that the predecessor statute to § 922(g) required only a minimal nexus between the firearm and interstate commerce. We find this holding instructive, but not binding on our interpretation of § 922(j).  Scarborough dealt with a felon-in-possession statute and was not mentioned in the Lopez opinion. Furthermore, prior panels have questioned the applicability of Scarborough if the constitutionality of § 922(g) was res nova, as the constitutionality of § 922(j) is today.  See Rawls, 85 F.3d at 243 ("If the matter were res nova, one might well wonder how it could rationally be concluded that mere possession of a firearm in any meaningful way concerns interstate commerce," but the language in Scarborough "carr[ies] a strong enough implication of constitutionality to now bind us . . . .") (Garwood, Wiener, Emilio M. Garza, J.J., specially concurring); Gresham, 118 F.3d at 265 n.11 (noting the restrictive interpretation of the commerce power in Lopez, but finding that only a "minimal nexus" between the firearm and interstate commerce is required under Rawls); Kuban, 94 F.3d at 973 n.4 (same).  In light of the uncertainty surrounding the application of Scarborough, we base our holding on the factors set out in Lopez.

shipped in interstate commerce."[17]  Unlike the statute at issue in Lopez, § 922(g)(1) expressly requires some nexus to interstate commerce, reflecting the ability of Congress to exercise its delegated power under the Commerce Clause to reach the possession of firearms that have an explicit connection with or effect on interstate commerce.[18]  We find that the same reasoning applies to § 922(j), and the language "shipped or transported in, interstate or foreign commerce" likewise provides the requisite nexus to commerce that was lacking in Lopez.

In addition to the jurisdictional nexus found in the language of § 922(j), congressional findings support the conclusion that possession of stolen firearms "substantially affects interstate commerce."[19] Congress initially enacted legislation containing a possession of stolen firearms provision out of a concern for

---

[17]18 U.S.C. § 922(g) (1994).

[18]See Lopez, 514 U.S. at 561 ("[Section] 922(q) has no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce."); compare Rawls, 85 F.3d at 243 ("[Section 922(g)] does expressly require some nexus to interstate commerce, thus importantly reflecting that Congress was exercising that delegated power and not merely functioning as if it were the legislative authority of a unitary state.") (Garwood, Wiener, Emilio M. Garza, J.J., specially concurring).

[19]See United States v. Monteleone, 77 F.3d 1086, 1091 (8th Cir. 1996) ("[S]ection 922(d) addresses the disposal of firearms, which is an inherently commercial activity."); United States v. Michael R., 90 F.3d 340, 344 (9th Cir. 1996) ("[Section 922(x)], possession of a handgun by a juvenile, as a general matter, could have a substantial effect on interstate commerce.").

"widespread traffic in firearms moving in or otherwise affecting interstate or foreign commerce."[20]   Section 922 has been amended twice since its inception, and both amendments have broadened the scope and strengthened the role of the federal government in the continuing fight against illicit trafficking in stolen firearms. The provision was first expanded in 1990 to reach firearms "shipped or transported in" interstate commerce.  In its report on proposed changes to § 922, the Judiciary Committee of the House of Representatives explained that the change in § 922(j) was designed to "expand Federal jurisdiction to permit prosecutions for transactions involving stolen firearms . . . where the firearms have already moved in interstate or foreign commerce."[21]  Again, in 1994, § 922(j) was amended to specify that the firearm could have traveled in interstate commerce "either before or after it was stolen."  Although Congress made no findings regarding this amendment, we perceive the clear purpose to have been to extend further its cognizance over any stolen firearm.

The expansion of federal jurisdiction over stolen firearms demonstrates Congress's commitment to eradicating the traffic in

---

[20]Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, § 901(a)(1) (1968).

[21]H.R.Rep. No. 681, 101st Cong., 2d Sess., pt. 1, at 106 (1990), reprinted in 1990 U.S.C.C.A.N. 6472, 6510; see also United States v. Cruz, 50 F.3d 714, 718 (9th Cir. 1995) (discussing the legislative history of § 922(j)); United States v. Honaker, 5 F.3d 160, 161-62 (6th Cir. 1993) (same), cert. denied, 510 U.S. 1180 (1994).

stolen firearms.  The propriety of that goal is exemplified in this case by Luna's admission that he intended to sell the stolen guns in question — the very activity that Congress seeks to end.

Given this historical background, we are satisfied that the regulation of stolen firearms is "an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated."[22] As such, we give due deference to the collective institutional expertise of Congress and conclude that § 922(j) embodies a legitimate exercise of Congress's power under the Commerce Clause.

3.   Constitutionality As Applied

Luna also contends that § 922(j) is unconstitutional as applied to him.  Specifically, Luna argues that because he broke into a house, stole firearms, and was later apprehended by the police, all of which occurred in Texas, his crime is of a purely local nature, historically prosecuted in the state system.  Because we hold that § 922(j) is constitutional on its face, it is likewise constitutional when applied to Luna, given his stipulation that

---

[22]Lopez, 514 U.S. at 561; see also United States v. Kirk, 105 F.3d 997, 1005 (5th Cir.) (en banc) (confirming the constitutionality of § 922(o), governing the possession of machine guns, because Congress has the power to "freeze the escalating destructive power of the weapons of that [drug] war"), cert. denied, 118 S.Ct. 47 (1997); see also United States v. Franklyn, 1998 WL 603237, *4 (2d Cir. 1998) (trafficking of machine guns has strong interstate effects), petition for cert. filed, No. 98-6500 (Oct. 16, 1998); United States v. Rybar, 103 F.3d 273, 279 (3d Cir. 1996) (same), cert. denied, 118 S.Ct. 46 (1997).

three of the five firearms named in the indictment were manufactured in either New York or Connecticut. These firearms had to travel in interstate commerce to reach the home Luna burglarized in Texas, thereby satisfying the interstate requirement of the statute.[23] We therefore hold that § 922(j) is constitutional as applied to Luna.

B.   APPLICATION OF SENTENCING GUIDELINES UNDER § 2K2.1

   1.   Standard of Review

We review the district court's interpretation of the Guidelines de novo and findings of fact for clear error.[24] We must uphold a defendant's sentence on appeal unless it was imposed in violation of the law, involved an incorrect application of the Guidelines, or constituted an unreasonable departure from the applicable Guideline range.[25]

   2.   Double Counting Under § 2K2.1(b)(4) and (b)(5)

Luna argues that when enhancing his base offense level, the district court impermissibly double counted by giving him a two-level increase under § 2K2.1(b)(4) because the firearms were stolen and a simultaneous four-level increase under § 2K2.1(b)(5) for

---

[23]See Pierson, 139 F.3d at 504 ("[E]vidence that a gun was manufactured in one state and possessed in another state is sufficient to establish a past connection between the firearm and interstate commerce.").

[24]United States v. Valdez-Valdez, 143 F.3d 196, 197 (5th Cir. 1998).

[25]United States v. Armstead, 114 F.3d 504, 507 (5th Cir.), cert. denied, 118 S.Ct. 315 (1997).

possessing these stolen firearms in connection with another felony offense, the burglary. By applying both subsection (b)(4) and (b)(5), Luna contends, his sentence was increased twice for the same conduct —— stealing firearms.

Luna relies primarily on dicta in United States v. Guerrero[26] and United States v. Armstead[27] to support his argument. In Guerrero and Armstead,[28] we questioned whether a district court should apply both § 2K2.1(b)(4) and (b)(5) when a defendant steals a firearm during a burglary, because the burglary Guideline expressly prohibits both adjustments in the same situation.[29] The burglary Guidelines, contained in § 2B2.1, include separate sentence enhancements when "a firearm . . . was taken"[30] and when "a dangerous weapon (including a firearm) was possessed."[31] According to the commentary, however, "possess[ing] a dangerous weapon (including a firearm) that was stolen during the course of

---

[26]5 F.3d 868 (5th Cir. 1993), cert. denied, 510 U.S. 1134 (1994).

[27]114 F.3d 504 (5th Cir.), cert. denied, 118 S.Ct. 315 (1997).

[28]Guerrero, 5 F.3d at 873 n.10; Armstead, 114 F.3d at 513 n.4.

[29]Luna did not commit a burglary under federal law (i.e. burglary of a bank or post office); therefore, the burglary Guideline was not applicable in calculating his offense level. See U.S.S.G. § 1B1.2 ("Determine the offense guideline section . . . most applicable to the offense of conviction.").

[30]U.S.S.G. § 2B2.1(b)(3).

[31]U.S.S.G. § 2B2.1(b)(4).

**13**

the offense" will not lead to sentence enhancement under both sections.[32]  In other words, the burglary Guidelines expressly prohibit double enhancements for stealing and possessing the same weapons at the same time.

Luna urges us to analogize the double counting prohibition in the burglary Guidelines to the firearm Guidelines.  In fact, because the firearm Guidelines contain very similar provisions, we have suggested —— in <u>Guerrero</u> and <u>Armstead</u> —— that separate enhancements for possession of a stolen firearm and possession of a firearm in connection with a burglary could constitute enhancing a defendant's sentence twice for the same conduct.  Until now, we have left this question unanswered, but we cannot avoid addressing it head-on today.  When we do, we conclude that the firearm Guidelines permit separate enhancements for the firearm's being stolen and for the same firearm's being possessed during the commission of the underlying felony offense.

We base this holding on the clear, unambiguous language of the firearm Guidelines.[33]  Section 2K2.1(b)(4) calls for enhancement "[i]f any firearm was stolen."  And, although a related commentary prohibits  application of this subsection in limited circumstances, none is present in this case.  Note 12 to § 2K2.1 explains that the

_____

[32]U.S.S.G. § 2B2.1, commentary n.3.

[33]<u>United States v. Vickers</u>, 891 F.2d 86, 88 (5th Cir. 1989) (noting that in the absence of a discernable, contrary intent, the court follows the clear language of the Guidelines).

**14**

enhancement in subsection (b)(4) is barred in cases involving a violation of § 922(j) —— the section under which Luna was convicted —— if "the base level offense is determined under subsection (a)(7)."[34]   Luna's base level offense was determined under subsection (a)(4), however, so this exception does not apply.

Section 2K2.1(b)(5), on the other hand, calls for enhancement "if the defendant possessed or used any firearm in connection with another felony offense."  Luna does not dispute the applicability of this subsection to his situation, but argues that it provides a four-level enhancement for possessing the same "stolen" firearm that produces a two-level enhancement under subsection (b)(4).  As we perceive significant differences between the two subsections, we disagree.  Subsection (b)(4) increases a base offense level ipso facto if the thing possessed by the defendant is a stolen firearm.  For example, if Luna had received the stolen firearm in his home and subsequently been convicted for attempting to sell it, his sentence would have been enhanced under subsection (b)(4) because the firearm he sought to sell was stolen.  But assuming that he committed no underlying felony, he would not have received an enhancement under subsection (b)(5). Subsection (b)(5) requires an increase in the base offense level when the firearm in question is somehow involved in another felony offense.[35]   The language in

---

[34]U.S.S.G. § 2K2.1, commentary n.12.

[35]See United States v. Barlow, No. 96-40565 (5th Cir. Dec. 13, 1996) (unpublished) (holding that the district court properly

**15**

(b)(5) demonstrates the heightened public safety concerns when, for example, a defendant enters a building illegally and, while there, possesses a firearm, because it could be used to harm the occupants or an unexpected visitor.  Under such circumstances, the potential for harm is greatly increased, thereby justifying the additional enhancement.

Nonetheless, even if we assume arguendo that application of both enhancements constitutes double counting, the result would remain the same.  We have recognized that the Guidelines do not prohibit double counting except when the particular Guideline at issue expressly does so.[36]  Furthermore, the Guidelines provide that "[t]he offense level adjustments from more than one specific offense characteristic within an offense are cumulative (added together) unless the guideline specifies that only the greater (or greatest) is to be used."[37]  Section 2K2.1 contains no such limitations regarding the application of subsections (b)(4) and (b)(5). In fact, we find telling by contrast that the burglary Guideline specifically prohibits double counting in the application of similar enhancements.  If the Sentencing Commission had wanted

---

enhanced defendant's base offense level under § 2K2.1(b)(5) because "another felony offense" refers to offenses other than the firearms possession).

[36]United States v. Morris, 131 F.3d 1136, 1139 (5th Cir. 1997), cert. denied, 118 S.Ct. 1546 (1998); United States v. Hawkins, 69 F.3d 11, 14 (5th Cir. 1995), cert. denied, 516 U.S. 1163 (1996).

[37]U.S.S.G. § 1B1.1, commentary n.4.

**16**

the principles expressed in the burglary Guidelines to apply equally to the firearm Guidelines, it knew how to make that happen. We hold that the district court's application of subsections (b)(4) and (b)(5) did not constitute prohibited double counting.

### 3.    Application of § 2K2.1(b)(4)

As an alternative to the double counting argument above, Luna contends that the district court improperly increased his offense level under § 2K2.1(b)(4) — "[i]f any firearm was stolen" — because the firearms were not "stolen" when he acquired possession of them during the course of the burglary.  To support his argument, Luna relies on the reasoning and conclusion reached by the Tenth Circuit in United States v. Rowlett.[38]  The Rowlett court held that an enhancement under subsection (b)(4) applies only when the firearm had already been stolen prior to the defendant's taking possession of it.[39]  Focusing on the fact that the Guideline is written in the past tense, the Rowlett court reasoned that subsection (b)(4) was concerned not with the way in which the firearms were acquired by a particular defendant but with their condition (stolen or not stolen) when acquired.[40]

---

[38]23 F.3d 300 (10th Cir. 1994).

[39]Id. at 304.

[40]Id.  To buttress its holding, the Rowlett court proceeded in dicta to examine Application note 12, which provides that the two level enhancement in subsection (b)(4) should not be applied when the defendant is convicted under specified offenses "involving stolen firearms or ammunition" because the "base offense level itself takes such conduct into account."  See

**17**

We disagree with the holding in <u>Rowlett</u> and its emphasis on the use of the past tense in subsection (b)(4).[41]  Rejecting this grammatical technicality, we choose instead to read subsection

---

U.S.S.G. § 2K2.1, commentary n.12 (1993) (amended 1995, 1997, and 1998).  <u>See</u> <u>also</u> U.S.S.G. Appendix C, amendment 522 for the text of Application note 12 at the time of the <u>Rowlett</u> opinion. Because the offenses listed in  Application note 12 dealt with the preexisting condition of the firearms as "stolen" and not the manner in which they were acquired by the defendant, the court explained, subsection (b)(4) must likewise address the preexisting condition of the firearm.  <u>Rowlett</u>, 23 F.3d at 304-05.

[41]The Government urges us to reject the holding in <u>Rowlett</u> for reasons expressed in <u>United States v. Askew</u>, 966 F. Supp. 1103 (M.D. Ala. 1997).  We agree with the outcome in <u>Askew</u>, but find an inherent flaw in its reasoning and choose, instead, to base our holding on an overall reading of the Guidelines.  The defendant in <u>Askew</u> was convicted of stealing firearms from a licensed gun dealer pursuant to § 922(u) and, during sentencing, received a two level enhancement under §  2K2.1(b)(4) because the firearms were stolen.  <u>Id.</u> at 1104.  Relying on the holding in <u>Rowlett</u>, Askew argued that he should not receive the (b)(4) enhancement because the firearms were not stolen when he took possession of them.  <u>Id.</u> at 1106.  The <u>Askew</u> court rejected this argument and focused on an amendment to Application note 12 to distinguish <u>Rowlett</u> and apply the (b)(4) enhancement to Askew. Note 12 had been amended in 1995 to include § 922(u) — an offense that addresses the manner in which the firearm was acquired — leading the <u>Askew</u> court to conclude that subsection (b)(4) must now reference both the preexisting condition of the firearm <u>and</u> the manner in which it was acquired.  <u>Id.</u> at 1106-07.
    The fallacy we discern in <u>Askew</u> is the court's reliance on an incorrect proposition in <u>Rowlett</u>, i.e., that Application note 12, prior to being amended in 1995, referenced statutes that dealt only with the preexisting condition of the firearm. Actually, 26 U.S.C. § 5861(g) — which was included in the 1993, pre-amended version of note 12 and has been included ever since — provides that, "[i]t shall be unlawful for any person . . . to obliterate, remove, change, or alter the serial number or other identification of a firearm required by this chapter."  As § 5861(g) does <u>not</u> address the preexisting condition of the firearm, the reasoning in <u>Askew</u> fails, as does the <u>Rowlett</u> dicta to that effect.

(b)(4) in the context of the entire firearms Guideline. Section 2K2.1 applies to the unlawful possession, receipt, or transportation of firearms. Limiting the application of subsection (b)(4) to firearms that were previously stolen would foreclose a two-level enhancement for defendants who, for example, steal a lawfully-possessed machine gun from a neighbor, in violation of 18 U.S.C. § 922(o).[42] The defendant in our hypothetical case example could be convicted for illegal possession of a machine gun under § 922(o) but, under the holding in Rowlett, could not receive a two-level enhancement under § 2K2.1(b)(4) simply because the machine gun was not stolen when the defendant acquired it. We find this result antithetical to the overall scheme of the Guidelines. Luna (1) illegally entered a home, (2) stole the firearms during the commission of the burglary, and (3) departed with the stolen guns in his possession. This course of conduct clearly triggered the application of § 2K2.1(b)(4).[43] We conclude that the district court

---

[42]Section 922(o) provides, "Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machine gun."

[43]Our reasoning is further supported by the 1995 amendment (which still applies) to Application note 12 that significantly expands the use of subsection (b)(4). Prior to 1995, note 12 instructed sentencing courts to disregard the enhancement in subsection (b)(4) if the defendant was convicted under one of the enumerated offenses involving stolen firearms or altered/obliterated serial numbers. Under the 1995 amendment, however, sentencing courts are instructed to disregard the enhancement only if the defendant was convicted under one of the enumerated offenses and his base offense level was calculated under subsection (a)(7), the "catchall" provision that applies when none among (a)(1)-(6) or (8) applies. See U.S.S.G. Appendix

**19**

properly applied a two-level enhancement under § 2K2.1(b)(4) to Luna's base offense level.[44]

4.    Base Offense Level Under § 2K2.1(a)(4)(A)

Luna's final challenge to his sentence relates to the calculation of his base offense level.  Luna contends that the district court erred in assessing his base offense level under § 2K2.1(a)(4)(A), which mandates a level of 20 if the defendant "had one prior felony conviction of either a crime of violence or a controlled substance offense."  Luna argues that the use of the past tense "had" indicates that § 2K2.1(a)(4)(A) was intended to apply only when the other violent felony conviction occurred prior to the commission of the firearms offense.[45]  In this case, Luna committed and was convicted of another burglary after he committed the federal firearms offense, but before he was sentenced for the firearms offense.

As correctly argued by the government, Luna's contention is

_____

C, amendment 522.  As two qualifications are now required to disregard the enhancement under (b)(4), the Sentencing Commission has demonstrated an intention for more defendants to receive the (b)(4) enhancement.

[44]Luna additionally argues that, at the very least, § 2K2.1(b)(4) is ambiguous and under the rule of lenity, ambiguity should be resolved in his favor.  United States v. Granderson, 511 U.S. 39, 54 (1994).  We do not find the term "stolen" to be ambiguous and therefore reject this argument.

[45]Luna relies on the Sixth Circuit case of United States v. Barton, 100 F.3d 43 (6th Cir. 1996), which held that "only those convictions that occur prior to the commission of the firearms offense may be counted against the defendant in determining the base offense level [under § 2K2.1]."  Id. at 46.

**20**

precluded by our previous decision in <u>United States v. Gooden</u>.[46] In <u>Gooden</u>, we held that a conviction for a robbery that occurred after the commission of a federal firearms offense was a "prior conviction" for purposes of § 2K2.1(a)(4)(A) because the defendant's sentence for robbery was imposed prior to the imposition of his sentence on the firearms offense.[47] Even if we were inclined to disagree, we would not be at liberty to disregard the holding of a prior panel of this court absent an intervening amendment to the statute or a Supreme Court opinion.[48] We therefore hold that the district court correctly calculated Luna's offense level under § 2K2.1(a)(4)(A).

III.

CONCLUSION

For the foregoing reasons, we hold that 18 U.S.C. § 922(j) is constitutional, both facially and as applied to Luna. Additionally, we find no reversible error in the application of the Guidelines by the district court. Accordingly, Luna's conviction and sentence are, in all respects,

---

[46]116 F.3d 721 (5th Cir.), <u>cert. denied</u>, 118 S.Ct. 350 (1997).

[47]<u>Id.</u> at 724-25; <u>accord</u> <u>United States v. McCary</u>, 14 F.3d 1502, 1506 (considering offenses resulting in conviction prior to the defendant's sentencing on the federal firearms offense in setting the defendant's base offense level under § 2K2.1).

[48]<u>United States v. Wilson</u>, 116 F.3d 1066, 1090 (5th Cir. 1997); <u>Matter of Evangeline Refining Co.</u>, 890 F.2d 1312, 1326 n.12 (5th Cir. 1989).

AFFIRMED.

DENNIS, Circuit Judge, concurring:

I join fully in the court's opinion, except for Part II.B.3.("Application of § 2K2.1(b)(4)"), as to which I concur in the result for the following reasons.

Section 2K2.1(b)(4) provides:

(b) Specific Offense Characteristics

* * *

(4) If any firearm was stolen, or had an altered or obliterated serial number, increase by **2** levels.

I agree that § 2K2.1(b)(4) applies to the sentence of a defendant convicted of knowingly possessing a stolen firearm if the weapon was a "stolen firearm" at the time of the offense of conviction, regardless of who committed the theft, i.e., that it is irrelevant whether the illegal possessor was also the thief. In the absence of Application Note 12, however, I do not think the Guideline unambiguously expresses an intention that every defendant convicted of knowingly possessing a stolen firearm in violation of

18 U.S.C. § 922(j) shall receive a 2 level increase in his offense level.

On the contrary, if it were not for Application Note 12, I would conclude that the Guideline itself should be read to mean that a defendant convicted of an offense involving a <u>stolen</u> firearm would receive a 2 level increase only if any firearm involved in the offense of conviction had an <u>altered or obliterated serial number</u>, and that a defendant convicted of an offense involving an <u>altered or obliterated serial number</u> would receive a like increase only if any firearm involved was <u>stolen</u>. (Of course, a defendant convicted of a crime to which the Guideline applies that does not by statutory definition involve a stolen or altered firearm, would also receive an increase by 2 levels under § 2K2.1(b)(4), if any firearm involved was stolen or had an altered or obliterated serial number.)  In the absence of Application Note 12, this meaning would logically and reasonably follow because (1) the fact that a firearm is a stolen firearm is a not a specific, but a generic, offense characteristic when the offense of conviction is knowingly possessing a stolen firearm; therefore, with respect to this particular offense of conviction, that generic offense characteristic would be implicitly excluded from the category of "specific offense characteristics"--in other words the fact that the firearm was stolen would not aggravate, distinguish or qualify the offense of conviction in any respect; and (2) the base offense level already takes into account that the firearm was stolen.

24

Application Note 12, however, explicitly, carefully and thoroughly provides that in certain cases of convictions involving stolen or altered firearms a defendant shall be spared from enhancement under § 2K2.1(b)(4) when his base offense is determined under § 2K2.1(a)(7). The extension of this mitigation only to cases in which the base level is determined under subsection (a)(7) clearly implies that it shall be withheld when the base level is determined under any other subsection; thus, two levels must be added if any firearm was stolen or had an altered serial number, unless the base level is determined under subsection (a)(7). This requirement is troublesome when the offense of conviction is possession of a stolen or altered firearm because the stated reason for the enhancement is an essential element of the basic offense, not an aggravating factor involved in the commission of the crime, and therefore provides no evident basis for increasing the punishment. However, a "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993). Because I cannot say that any flaw in the rationale of the Guideline or its commentary reaches these proportions, I respectfully concur in the result.

I cannot agree with the majority's argument that "the overall scheme of the Guidelines" and the machine gun hypothetical provide additional support for that result. Without Application Note 12,

25

I believe the 2 level increase would not be required.