**UNITED STATES of America, Appellee,**

v.

**Mark REED, Defendant–Appellant.**

**Nos. 1438, 1579, Dockets
95–1656(L), 96–1027.**

United States Court of Appeals,
Second Circuit.

Argued May 21, 1996.

Decided July 9, 1996.

Joshua W. Nesbitt, Assistant United States Attorney, Albany, New York (Thomas J. Maroney, United States Attorney for the Northern District of New York, Albany, New York, on the brief), for Appellee.

Colleen P. Cassidy, New York City (The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York City, on the brief), for Defendant–Appellant.

Before KEARSE, WINTER, and CALABRESI, Circuit Judges.

KEARSE, Circuit Judge:

This case returns to us on the appeal of defendant Mark Reed from a judgment entered in the United States District Court for the Northern District of New York, Frederick J. Scullin, Jr., *Judge*, following our remand for findings in connection with sentencing, *see United States v. Reed*, 49 F.3d 895 (1995) ("*Reed I*"). Reed was convicted, following his plea of guilty, on one count of conspiracy to distribute and to possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1988); and one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371 (1988) and 18 U.S.C. § 1341 (Supp. II 1990). On remand, the district court found that Reed had willfully failed to appear for sentencing and that his sentence should be enhanced pursuant to § 3C1.1 of the federal Sentencing Guidelines ("Guidelines") for obstruction of justice. After making other adjustments, the court sentenced him to, *inter alia*, 104 months' imprisonment, to be followed by a four-year term of supervised release. On appeal, Reed again challenges his sentence, contending principally that the conduct found by the district court does not constitute obstruction of justice. For the reasons that follow, we disagree, and we affirm the judgment.

## I. BACKGROUND

The events that occurred between Reed's plea of guilty and his initial sentencing were set out in detail in *Reed I*, 49 F.3d 895, familiarity with which is assumed, and will be summarized here only briefly.

### A. *The Events and Proceedings Leading to the Initial Sentencing*

Reed pleaded guilty to the above conspiracy offenses in April 1993 pursuant to an agreement with the government. He agreed to cooperate with the government in the prosecution of his coconspirators, and he was released on bail on April 29, subject to certain conditions. The conditions included the requirements that Reed maintain his then-current residence in Troy, New York, and keep in contact with his probation officer and with an agent of the Federal Bureau of Investigation ("FBI") with whom he was to

cooperate. Sentencing was to occur on an unspecified date of which Reed was to be notified.

In approximately October 1993, after a number of adjournments, sentencing was finally scheduled for November 19, 1993. Prior to the court's setting that date, however, Reed moved from his Troy residence and did not notify his attorney, his probation officer, or any other government agent of his move. On November 19, Reed failed to appear for sentencing, and the district court issued a bench warrant for his arrest. On December 15, 1993, Reed was located by local police and agents of the Drug Enforcement Administration ("DEA") at a house in Albany, New York. Following the arrival of the law enforcement agents, Reed jumped out of a window and ran for some 1½ blocks before being captured.

At the ensuing sentencing hearing, which began on March 24, 1994, the government argued that Reed timely knew that his sentencing was scheduled for November 19, 1993, and that the court should adjust Reed's offense level upward for obstruction of justice on the basis of, *inter alia*, his failure to appear for sentencing on November 19, his failure to turn himself in thereafter, and his flight on December 15 after being located by the authorities. The witnesses included Reed's probation officer, to whom he was supposed to report monthly while on bail, the FBI agent to whom he was supposed to report daily, and a DEA agent to whom Reed did report for a time. According to the respective witnesses, Reed ceased to maintain contact with the FBI agent in July 1993; he ceased to report to his probation officer in August; and his last regular contact with the DEA was in August, though he made occasional contact with DEA agents thereafter and helped to set up the arrest of a drug courier in early September. After failing to appear for the November 19 sentencing, Reed spoke by telephone with a DEA agent who told him that "the best thing for him to do would be to turn himself in." (Sentencing Transcript ("S.Tr.") dated March 24, 1994, at 46.)

Reed maintained that he had not attempted to obstruct justice and sought to explain his conduct. He testified that he had not appeared at the November 19 sentencing because he did not know that that date had been set. Having agreed to cooperate with the authorities, he had been physically attacked and threatened by someone sent to his home by the coconspirators. Reed thereafter left his home in Troy, and his attorney was unable to locate him to advise him of the sentencing date. Reed said that he had not learned of the November 19 date until a week after it had passed and that he then decided that he would turn himself in after Christmas. He said that on December 15, when the authorities broke into the Albany house in which he was staying, he believed them to be emissaries from the coconspirators, and he fled because he feared for his life.

The district court concluded that Reed's offense level should be increased for obstruction of justice, "considering the conduct of the defendant since the time of his plea and his failure to appear for previously scheduled sentencing hearing." (S.Tr. dated March 25, 1994, at 13.) The court stated to Reed: "you have attempted to manipulate people and matters to the best of your ability and have failed to comply with the directions and instructions of the Court accorded by your release." (*Id.*) Having increased Reed's offense level for obstruction of justice, the court also denied him credit for acceptance of responsibility. The court sentenced Reed to, *inter alia*, 144 months' imprisonment.

**B. Reed I**

■ On appeal, as reflected in *Reed I*, this Court discussed principles governing obstruction-of-justice enhancements under § 3C1.1 and concluded that the district court's findings were not sufficiently clear to permit meaningful appellate review. Section 3C1.1 provides for an upward adjustment in offense level if the defendant, *inter alia*, "willfully" obstructed or attempted to obstruct the administration of justice during sentencing for the underlying offense. Since the term "willfully" implies a *mens rea* requirement, *see, e.g., United States v. Stroud*, 893 F.2d 504, 507 (2d Cir.1990), such an adjustment is appropriate only if "the defen-

dant had the specific intent to obstruct justice, *i.e.,* . . . the defendant consciously acted with the ·purpose of obstructing· justice," *United States v. Defeo,* 36 F.3d 272, 276 (2d Cir.1994) (internal quotation marks omitted). *See generally Reed I,* 49 F.3d at 900. We also pointed out that certain conduct, such as intentionally failing to appear as required at judicial proceedings, is so inherently obstructive of the administration of justice that it is sufficient that the defendant willfully engaged in the underlying conduct, regardless of any additional purpose. *See id.; United States v. Aponte,* 31 F.3d 86, 88 (2d Cir.1994) ("It is sufficient for these purposes that the defendant· intended to fail to appear at a judicial proceeding, regardless of his reason for desiring to flee.").

 If the defendant raises an issue as to the state of mind with which he engaged in the conduct that is alleged to have obstructed or impeded the administration of justice, the sentencing court "must make a 'specific finding of intent.'" *Reed I,* 49 F.3d at 901 (quoting *United States v. Thomas–Hamilton,* 907 F.2d 282, 285 (2d Cir.1990)); *see also United States v. Defeo,* 36 F.3d at 276. Further, if the government has proffered more than one basis· for an enhancement and the court decides that the enhancement is warranted, the court should specify the basis or bases on which it has relied, and make the pertinent findings, in order to permit appellate review. *See generally Reed I,* 49 F.3d at 901.

With respect to the initial sentencing of Reed, we stated that

[t]he district court did not make findings sufficient to reveal which of the bases on which the government presented evidence or argument formed the basis of the court's decision to enhance for obstruction of justice, and it made no findings that the conduct it believed was obstructive was willfully so. The court's statement that it was "considering the conduct of the defendant since the time of. his plea and his failure to appear for . . . sentencing" is unclear as to whether the court was relying on Reed's failure to appear on November 19 or on his conduct since the time of his failure to appear.

*Id.* We noted that the court did not make a finding that Reed knew before November 19, 1993, that that date had been set for his sentencing, and we questioned whether a finding of such knowledge would have been sustainable in light of the evidence at the sentencing hearing. We noted, however, that the sentencing court might properly consider whether the concept of conscious avoidance could be applied in assessing whether a defendant's failure to appear for a scheduled hearing was willful. *See Reed I,* 49 F.3d at 902–03.

Further, we noted that the district court did not make findings that Reed's conduct after November 19 was intended to obstruct sentencing. For example, the court "made no finding that Reed had quit his Troy residence in an effort to thwart the disposition of the criminal charges against him," *id.* at 902; "made no finding that Reed's seeking· to deal with the DEA instead of the FBI or his probation officer was an attempt to avoid being sentenced at all, rather than an attempt, as Reed testified, to earn a more lenient sentence," *id.;* ·and "did not find that [Reed] knew that the men from whom he attempted to escape were law enforcement officers," *id.*

In sum, we concluded that "as to none of the [government's] proffered bases did the court find that Reed's intent was to obstruct justice or to do an act that was inherently such an obstruction." *Id.* Accordingly, we vacated and remanded for findings.

### C. *The District Court's Findings on Remand*

On remand, the district court made explicit findings. It found, *inter alia,* that Reed's explanations for his failure to appear for sentencing were not credible, that his lack of knowledge as to the November 19 date resulted from his conscious avoidance of that information by failing to keep in touch with anyone after he moved from his Troy residence, and that his failure to surrender himself for sentencing was willful:

The defendant failed to keep in touch with his attorneys and *purposely did not keep his attorney apprised of his whereabouts*

in order to be notified of any changes in sentencing—or the sentencing date. Moreover, the Court finds from the credible evidence before it that *the law enforcement officers did identify themselves sufficiently when they attempted to arrest the defendant and that he willfully and knowingly fled from them.* Additionally, the Court finds that the *defendant willfully failed to report to authorities as required by his bail conditions,* of which he was aware. *Even after being advised by DEA agents that his scheduled sentencing date had passed and that he should surrender,* the defendant who was fully capable of contacting the FBI, the DEA, the U.S. Probation Office or his own attorney to arrange for his surrender, *willfully chose not to do so.*

. . . .

... I am convinced, based upon what I believe to be the credible evidence before me, and I evaluated the testimony at that hearing, that *you did intentionally not show up or avoided, consciously avoided knowing when the date was for you to be sentenced by failing to keep in touch with anyone;* and *also having been told by an agent that you should surrender yourself, you avoided doing that and did in fact flee from those officers.* There is no question in my mind *you knew who they were, and they identified themselves to you.* I find the obstruction is warranted and in view of the obstruction, disregarded your acceptance of responsibility.

(Resentencing Transcript dated October 26, 1995, at 16, 18 (emphases added).) The court concluded that based on its credibility assessments and its "review of the entire record" (*id.* at 15), the obstruction enhancement was warranted. It accordingly also denied Reed credit for acceptance of responsibility. The court nonetheless "departed downward 40 months because of [Reed's] continued cooperation." (*Id.* at 18.) Thus, though his original sentence had included a prison term of 144 months, the imprisonment term of the sentence imposed on remand was 104 months.

This appeal followed.

## II. DISCUSSION

■ On appeal, Reed contends principally that, as a matter of law, none of the acts found by the district court on remand suffices to constitute obstruction of justice. We conclude that the record is sufficient to support the factual findings made by the district court on remand and that the conduct found, viewed as a whole, suffices to support the conclusion that Reed willfully attempted to obstruct justice by failing to appear for sentencing. We need not decide whether, in theory, any of Reed's discrete acts would have sufficed to constitute obstruction.

■ As discussed in *Reed I,* an obstruction-of-justice enhancement may be warranted by a defendant's intentionally failing to appear, as required, at judicial proceedings. *See* 49 F.3d at 900; *see also United States v. Vargas,* 986 F.2d 35, 41–42 (2d Cir.) (enhancement appropriate where defendant fled during controlled delivery in which he was cooperating after his arrest and grabbed officer's gun when apprehended), *cert. denied,* 508 U.S. 941, 113 S.Ct. 2417, 124 L.Ed.2d 640 (1993); *United States v. Mondello,* 927 F.2d 1463, 1466–67 (9th Cir.1991) (enhancement appropriate where defendant fled after he had been arrested for the offense, had been told he was a suspect in a criminal case, and "[f]or two weeks prior to his final arrest ... played a cat-and-mouse game of avoiding the authorities, though he knew he was expected to surrender himself voluntarily"). In determining whether a failure to appear was intentional, the court should view the facts not piecemeal but in conjunction. *See, e.g., United States v. Shoulberg,* 895 F.2d 882, 886 (2d Cir.1990) (in determining whether facts constituted attempted obstruction of justice under § 3C1.1 sentencing court "properly refused to view them piecemeal rather than in conjunction"). *Compare United States v. Stroud,* 893 F.2d at 507 (mere flight from arrest in immediate aftermath of a crime cannot by itself justify enhancement under § 3C1.1), *with United States v. White,* 903 F.2d 457, 461–62 (7th Cir.1990) (flight from arresting officers in conjunction with other factors can provide a basis for an obstruction-of-justice enhancement under § 3C1.1).

The sentencing court's findings of fact must be accepted on appeal "unless they are clearly erroneous." 18 U.S.C. § 3742(e) (1994); *see also United States v. Pimentel,* 932 F.2d 1029, 1031 (2d Cir.1991). "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). And "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574, 105 S.Ct. at 1511.

In the present case, we conclude that the district court's post-remand findings as to Reed's conduct and state of mind are not clearly erroneous. The finding that Reed consciously avoided timely knowledge of his new sentencing date is a permissible inference from Reed's testimony that his attorney was to let him know in advance of the new sentencing date, and the undisputed facts that when Reed moved from his Troy residence he (a) did not inform his attorney, his probation officer, the FBI agent, or the DEA agents even of the fact that he had moved, much less of his new whereabouts, and (b) did not keep in contact with his attorney, who Reed knew would not know where to reach him.

The court's finding that the DEA and police officers identified themselves sufficiently when they attempted to arrest Reed on December 15 and that he willfully and knowingly fled from them was also a permissible inference from the testimony that the officers shouted "police" as Reed hit the ground after jumping from the window; his 1½-block run occurred thereafter. The inference was further supported by testimony from one of the first DEA agents to reach Reed after his run; the agent testified that when Reed stopped, it appeared to be because he had tired or tripped. Though the court would have been free to infer that when Reed ran he had not understood or reasonably did not credit the shout of "police," the court's contrary inference that Reed was aware that he was running from law enforcement officers was permissible and hence cannot be termed clearly erroneous.

The finding that Reed had willfully failed to comply with the bail condition that he regularly report to certain authorities was easily supportable for at least several months of the period between his release and November 19. Even accepting that Reed's substitution of the DEA agents for the FBI agent as the person to whom he would report did not bespeak any obstructive intent, the evidence was undisputed that after August 1993, his contacts with the DEA agents were sporadic, a far cry from the daily reporting to the FBI as required by the release conditions.

Finally, there can be no serious challenge to the court's finding that Reed's failure to turn himself in once he learned of the November 19 date, especially in light of the advice he received from the DEA agent to turn himself in, was a willful delay of sentencing. Reed testified that he decided that he would not turn himself in until after Christmas.

In sum, there was evidence in the record to support the district court's discrete factual findings, and we cannot conclude that they are clearly erroneous. Reed argues nonetheless that none of his acts sufficed to constitute a willful attempt to obstruct sentencing. We reject his argument because it would have us segment his conduct and review the record piecemeal. The district court was not required to view his conduct in this way, and it apparently did not do so, stating that it based its obstruction conclusion on its review of "the entire record." As a whole the record showed a defendant who impermissibly moved from his known address; who deliberately did not inform his attorney or any government officers, with whom he was supposed to remain in contact, of his new address or even that he had moved; who did not contact his attorney to make timely inquiry as to the rescheduling of his sentencing; who learned that the new scheduled date had passed and was advised by a DEA agent to turn himself in, but did not turn

himself in; who decided unilaterally that he would delay sentencing for at least another month because that was his preference; and who, realizing that law enforcement officers had located him, ran.

In light of the district court's supportable findings and its reliance on the record as a whole, we conclude that the enhancement for obstruction of justice was neither a misapplication of the Guidelines nor an abuse of discretion.

## CONCLUSION

Reed has also argued that the district court's denial of credit for acceptance of responsibility was erroneous because it was premised on the court's obstruction-of-justice analysis. Having concluded that the obstruction enhancement was appropriate, we also uphold the district court's denial of credit for acceptance of responsibility.

We have considered all of Reed's arguments on this appeal and have found in them no basis for reversal. The judgment of the district court is affirmed.