**UNITED STATES of America,**
**Appellee,**

v.

**Earle R. SHEPARDSON, III, Derek P.**
**St. Don, Defendants–Appellants,**

**David Maxwell, Defendant.**

**Docket Nos. 98–1036, 98–1169.**

United States Court of Appeals,
Second Circuit.

Argued: Oct. 28, 1998

Decided: Nov. 04, 1999

Elizabeth D. Mann, Woodstock, VT, for defendant-appellant, Earle Shepardson.

Mark E. Furlan, Randolph, VT, for defendant-appellant, Derek St. Don.

John M. Conroy, Assistant United States Attorney, Burlington, VT (Charles R. Tetzlaff, United States Attorney, District of Vermont, David V. Kirby, Chief, Criminal Division, Burlington, VT, on the brief), for appellee.

Before: LEVAL and VAN GRAAFEILAND, Circuit Judges, and BURNS, Senior District Judge.[1]

BURNS, Senior District Judge:

Defendants-appellants Earle R. Shepardson and Derek P. St. Don appeal sentences imposed for their felony firearms convictions by the United States District Court for the District of Vermont (Murtha, C.J.). Both appellants claim that the District Court erred by: (i) enhancing their sentences by two levels pursuant to Section 2K2.1(b)(4) of the Sentencing Guidelines ("USSG" or the "Guidelines") because the firearms were stolen; (ii) enhancing by four levels under Section 2K2.1(b)(5) because the firearms were possessed in connection with another felony; and (iii) refusing to depart downward from the Guidelines. In addition, Shepardson claims that, because he was not a "prohib-

---

1. Honorable Ellen Bree Burns, of the United States District Court for the District of Connecticut, sitting by designation.

ited person" within the meaning of Section 2K2.1(a)(4)(B), the Court erred in setting his base level for the offense. We affirm.

## BACKGROUND

Neither the factual predicate for appellants' convictions, nor the convictions themselves, are in dispute. Appellants came into possession of the firearms for which they were convicted by burglarizing three hunting camps in Vermont. On April 14, 1995, they stole a shotgun from a camp in Fairlee, Vermont. The following day, they took a rifle from another camp in Topsham, Vermont. Some nineteen months later, on November 12, 1996, appellants looted a third hunting camp in Corinth, Vermont, stealing a dozen more assorted firearms.

The shotgun and rifle stolen in April 1995 were swapped for money and some marijuana with a Newbury, Vermont man, Ronald French, who later implicated St. Don and Shepardson in the first two burglaries to state authorities. St. Don was placed on probation; Shepardson was charged by the State of Vermont with felony possession of stolen property by means of a state felony information. While this charge was pending, appellants committed the Corinth burglary, the proceeds of which were brought across the state line to the house of a New Hampshire man, Kevin Graf, who bought the stolen firearms. As part of the exchange with Graf, Shepardson acquired a sawed-off shotgun, which was later given to St. Don as "payment" for his role in the Corinth burglary.

Shepardson pleaded guilty to, and was convicted of, one count of possessing stolen firearms transported in interstate commerce in violation of 18 U.S.C. § 922(j). At sentencing, Shepardson's base offense level was set at 20 in accordance with Section 2K2.1(a)(4)(B) because the offense involved a firearm and the court found him to be a "prohibited person" due to the pending state felony charges.

St. Don pleaded guilty to, and was convicted of, one count of possessing an unregistered sawed-off shotgun—the one given to him by Shepardson—in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871. His base offense level was set at 18 pursuant to Section 2K2.1(a)(5). Defendants were sentenced under the 1997 version of the Guidelines, the relevant provisions of which do not differ from the prior version that was in effect when the offense conduct occurred. See 18 U.S.C. § 3553(a)(4)(A) (1999); United States v. Martinez–Rios, 143 F.3d 662, 670 (2d Cir.1998) ("Sentencing courts generally must apply the version of the Sentencing Guidelines in effect at the time of sentencing, except where this would result in a more severe sentence than would be appropriate under the version in effect at the time of the commission of the offense.").[2]

At sentencing, the court added twelve additional levels to each defendants' base offense level: four levels pursuant to Section 2K2.1(b)(1)(D) because the offense involved between 13 and 24 firearms; two levels under Section 2K2.1(b)(3) because the offense involved a destructive device; two additional levels pursuant to Section 2K2.1(b)(4) because the firearms were stolen; and four levels in accordance with Section 2K2.1(b)(5) because the offense occurred in connection with another felony. Of these four specific offense enhancements, appellants contest only the latter two in this appeal.[3]

Appellants were sentenced to the lowest term of incarceration permitted within their respective ranges. Shepardson's of-

---

**2.** Because defendants were sentenced under the 1997 version of the Guidelines, our citations to the Guidelines are to the 1997 version unless otherwise indicated.

**3.** St. Don also claims error in the four levels added under Section 2K2.1(b)(1)(D) based on the number of firearms. Because this claim is made in tandem with his argument under subsection (b)(4), we need not address it separately.

fense level was 29 (base offense level 20, plus 12 levels for enhancements, minus 3 levels for the Guideline 3E1.1 reduction for defendant's acceptance of responsibility), which, combined with a criminal history category III (for 5 criminal history points), resulted in a sentencing range of 108 to 120 months. He was sentenced to 108 months. St. Don's offense level was 27 (base offense level 18, plus 12 levels for enhancements, minus 3 levels for the Guideline 3E1.1 reduction), which, combined with a criminal history category II (for 3 criminal history points), resulted in a sentencing range of 78 to 97 months. He was sentenced to 78 months.

Appellants assert three claims of error in their sentencing appeals. First, appellants claim that the two level enhancement for stolen firearms pursuant to Section 2K2.1(b)(4) amounts to an impermissible double counting where the guns were not used in the commission of the offense, but were the objects taken in the course of the burglaries. Second, appellants claim that four levels were erroneously added to their base offense levels under Section 2K2.1(b)(5) because the firearms were not possessed in connection with another felony. Third, appellants seek review of the sentencing court's decision not to depart downward from the Guidelines.

Shepardson also claims that he should not have been considered a "prohibited person" in setting his base offense level under Section 2K2.1(a)(4)(B) because the state felony charges pending at the time of the offense of conviction were made by means of an information, rather than an indictment. After considering Shepardson's claim, we will address in turn appellants' three common claims of error.

## STANDARD OF REVIEW

 We review the district court's findings of fact for clear error, mindful that "'where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *United States v. Reed,* 88 F.3d

174, 180 (2d Cir.1996) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). This Court reviews the district court's interpretation of the Guidelines de novo, *see United States v. Zagari,* 111 F.3d 307, 323 (2d Cir.1997), and gives "due deference" to its application of the Guidelines to the facts. 18 U.S.C. § 3742(e) (1999) ("The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of witnesses, ... and shall give due deference to the district court's application of the guidelines to the facts."). Facts relevant to sentencing need only be established by a preponderance of the evidence, and a sentencing court may rely upon any information available to it. *See United States v. Franklyn,* 157 F.3d 90, 97 (2d Cir.1998).

Accordingly, Shepardson's appeal of his base offense level determination will be examined de novo to decide whether the district court properly interpreted "prohibited person" to include one charged by a state's felony information. Similarly, we will consider de novo appellants' claim that imposing the two level stolen firearm enhancement amounts to an impermissible double counting where the offense of conviction was the theft of firearms. The sentencing court's determination that appellants' convictions occurred in connection with another felony, however, cannot be disturbed on appeal unless clearly erroneous. *See United States v. Spurgeon,* 117 F.3d 641, 643 (2d Cir.1997).

## DISCUSSION

### I. *Shepardson's Base Offense Level*

The district court assigned Shepardson a base offense level of 20 because it found him to be a "prohibited person" within the meaning of Section 2K2.1(a)(4)(B). That determination rested upon the court's interpretation of the definition in Application Note 6, which states: " 'Prohibited person,' as used in subsection[ ] (a)(4)(B) ... means anyone who: (i) is under indictment

for, or has been convicted of, a 'crime punishable by imprisonment of more than one year,' as defined by 18 U.S.C. § 921(a)(20)...." USSG § 2K2.1, comment. (n.6). The sentencing court construed "prohibited person" to include one charged by a felony information, as well as by indictment. Citing the absence of the term "information" from the applicable Guidelines provision, Shepardson urges a narrower construction of "indictment," limited to its plain meaning.

■ We hold that "prohibited person" as used in Section 2K2.1(a)(4)(B) includes those whose pending state felony charges were filed by information. As such, Shepardson was correctly determined to be a "prohibited person" because felony charges—filed by a state information— were pending at the time of his offense. The statutory framework for Guideline 2K2.1 leads us to this interpretation of "indictment" as used in Application Note 6 of Guideline 2K2.1. Shepardson was convicted under 18 U.S.C. § 922. 18 U.S.C. § 921(a) defines terms for Section 922. Guideline 2K2.1, in turn, provides the sentencing instructions for violations of Section 922. The terms used in Guideline 2K2.1 are reasonably understood to carry the same meaning as used in Section 922 itself. According to Section 921(a), the term "indictment" as used in Section 922 "includes an indictment or *information* in any court under which a crime punishable by imprisonment for a term exceeding one year may be prosecuted." 18 U.S.C. § 921(a)(14) (emphasis added). We therefore conclude that the term "indictment" as used in Application Note 6 of Guideline 2K2.1 for sentences under Section 922 follows the same definition and thus also encompasses both indictment and information. *Cf. United States v. Carr,* 880 F.2d 1550, 1553 (2d Cir.1989) (laws in pari materia should be construed together).

We note furthermore that this interpretation is consistent with common sense, while the interpretation argued by the defendant would have troublesome conse-

quences. The federal law, and some states, like New York, use grand jury process to charge felonies. Other states, like Connecticut, have no grand juries; their felony charges are brought by information. Other states, like Vermont, permit both routes, leaving the choice to the prosecutor's discretion.

Construing "indictment" to include felony information, as provided in Section 921(a), means that the Guidelines attach the same consequence to the crime of gun possession or transportation when committed by persons with felony charges pending against them, regardless of the charging procedure followed. The defendant's reading would mean that defendants who committed the crime of illegal gun possession when they had felony charges pending against them would receive significantly different sentences depending solely on whether the pending felony charges were in a jurisdiction that uses the grand jury or the information procedure (or in a jurisdiction that allows choice, depending on which procedure the prosecutor has chosen). We think it entirely reasonable to construe Guideline 2K2.1 as incorporating the statutory definition applicable to Section 922 so as to avoid such disparities.

Both the Eighth and Tenth Circuits have considered the definition of "indictment," albeit not in the sentencing context, and adopted a similarly broad view to include a charge by felony information. *See Schook v. United States,* 337 F.2d 563, 567–68 (8th Cir.1964); *United States v. Fillman,* 162 F.3d 1055, 1057 (10th Cir. 1998). In *Schook,* defendant was convicted for transporting a shotgun in interstate commerce in violation of the Federal Firearms Act, 15 U.S.C. § 902(e) (repealed in 1968), the predecessor of the code provision under which Shepardson was convicted. There, defendant had been under a state felony charge by information when the offense of conviction occurred. Like Shepardson, defendant Schook asserted that the absence of the term "information" in the statute should be strictly construed.

The Eighth Circuit disagreed, however, because it would "emasculate Congress' purpose for us to distinguish between persons lawfully charged with a felony by 'information' and those charged by 'indictment.'" *Id.* at 567.

The Tenth Circuit took its cue from *Schook.* In *Fillman,* the court held that the term "indictment" as used in 18 U.S.C. § 842(i), which makes it unlawful for suspected felons to possess an explosive, included those charged by a state felony information. 162 F.3d at 1057. As in the Guideline provision at issue here, the term "information" is absent from § 842(i), which does not define "indictment." Defendant argued that since the state felony charges pending against him at the time of his possession of explosives were filed by an information, his conduct was not prohibited by the unambiguous text of the statute. *Id.* at 1056. The Tenth Circuit disagreed and affirmed the conviction, reasoning that under 18 U.S.C. § 921(a)(14), "[t]he term 'indictment' includes an indictment or [an] information," and that because Section 921(a) and Section 842(i) "are in pari materia, we rely on th[e] definition [expressed in Section 921(a) ] in construing [Section] 842(i)." The court also noted that "[a]dopting Mr. Fillman's interpretation of the statute would lead to serious inconsistencies in the law's application between states that charge by grand jury and those that charge by information. It seems very unlikely that Congress intended to create such a discrepancy." *Id.* at 1057 (citing *Schook,* 337 F.2d at 567–68); *see also United States v. Williams,* 986 F.Supp. 1445, 1445–46 (D.Kan.1997) (following *Fillman* in a gun possession conviction under 18 U.S.C. § 922(n) where "the

court f[ound] defendant's position to be one of semantics, not substance").

Given these precedents, the express incorporation of a charge by information into "indictment" as defined in an analogous statute, and the context of other aggravating criteria selected by the Commission to warrant the heightened penalty for "prohibited persons," we conclude that Shepardson's base offense level was properly assigned under Section 2K2.1(a)(4)(B). In accordance with Application Note 6, Shepardson was a "prohibited person" because state felony charges were pending at the time of his offense of conviction.[4] That the state charges were filed by means of an information, rather than an indictment, does not relieve defendant of the sanction imposed by the Guidelines for committing a subsequent offense while under "indictment" for a prior felony.

## II. *Appellants' Section 2K2.1(b)(4) Enhancement*

█ The sentencing court imposed a two level enhancement pursuant to Section 2K2.1(b)(4) because it found that the firearms were stolen. That enhancement adds two levels "[i]f any firearm was stolen, or had an altered or obliterated serial number...." USSG § 2K2.1(b)(4). Appellant Shepardson claims error with the district court's application of Section 2K2.1(b)(4), arguing that, where the underlying offense of conviction was for stealing firearms, imposing this enhancement constitutes impermissible double counting.[5] The unequivocal language of Application Note 12 and structure of the base offense levels in Guideline 2K2.1, however, belie appellant's argument. We find the Guidelines commentary dispositive, and join the

---

4. The government contends that Application Note 6(iii) of Guideline 2K2.1 provides an alternative basis for finding Shepardson a prohibited person as "an unlawful user of ... a controlled substance." *Id.* Since the district court's classification of Shepardson as a prohibited person rested solely on Application Note 6(i), we need not consider the government's alternative argument.

5. St. Don only challenges the sentencing court's factual findings with respect to this enhancement, which we will address together with his challenge to the Section 2K2.1(b)(5) enhancement, in section III., *infra.*

majority of circuits that have considered this issue.

Application Note 12 to Guideline 2K2.1 plainly spells out the limited circumstances in which the subsection (b)(4) enhancement should not be applied:

> If the only offense to which § 2K2.1 applies is 18 U.S.C. § 922(i), (j), or (u), 18 U.S.C. § 924(j) or (k), or 26 U.S.C. § 5861(g) or (h) (offenses involving a stolen firearm or stolen ammunition) and the base offense level is determined under subsection (a)(7), do not apply the adjustment in subsection (b)(4) unless the offense involved a firearm with an obliterated serial number. This is because the base offense level takes into account that the firearm or ammunition was stolen.

USSG § 2K2.1, comment. (n.12). By so painstakingly enumerating the circumstances in which the subsection (b)(4) enhancement does not apply, Application Note 12 indicates that the enhancement should be imposed where those specified criteria are not met.

Because Shepardson does not meet the criteria set out in Application Note 12, he cannot take advantage of this exclusion from the subsection (b)(4) enhancement. The instructions of Application Note 12 are pellucid: apply the subsection (b)(4) enhancement unless defendant was (i) convicted under one of the specifically enumerated offenses, *and* (ii) sentenced to a base offense level under subsection (a)(7). Although Shepardson was convicted under the applicable section of the criminal code, § 922(j), Application Note 12 does not shield him from the subsection (b)(4) enhancement because his base offense level was determined under subsection (a)(4)(B)—not subsection (a)(7), as provided for in Application Note 12. Because Application Note 12 does not operate to bar the subsection (b)(4) enhancement in these circumstances, the sentencing court did not err in applying the enhancement.

■ Even if subsection (b)(4) was correctly applied, appellant asserts that, notwithstanding the text of Application Note 12, the structure of Guideline 2K2.1 takes into consideration the fact that the firearms were stolen in establishing each base offense level. In essence, Shepardson contests the increased punishment because the stated reason for the enhancement is also an essential element of the underlying offense, not an aggravating factor involved in the commission of the crime. If the subsection (b)(4) enhancement and the establishment of the base offense levels under subsections (a)(1) to (a)(6) were not predicated on conceptually different notions related to sentencing, then the addition of two levels might well be double counting where the conduct penalized by the underlying offense of conviction was the same as that for which the enhancement was added. The structure of base offense levels set forth in Guideline 2K2.1, however, reveals a punitive purpose distinct from the subsection (b)(4) enhancement.

Guideline 2K2.1 sentences impose a stiffer sanction for the possession of a firearm that was stolen—either by assigning the base offense level under subsection (a)(7), or through the subsection (b)(4) enhancement. Base offense levels assigned under Guideline 2K2.1 do not necessarily reflect that a firearm was stolen. The first six base offense levels available under subsection (a) are ranked according to the presence, alone or in combination, of three aggravating factors: (i) type of firearm, (ii) prior felonies, and (iii) whether defendant is a "prohibited person." Subsection (a)(8) is of no consequence because it merely prescribes the base offense level for infractions that do not involve stolen firearms. As the default base offense level assigned if none of the aggravating factors were present in the crime, subsection (a)(7) is the only base offense level in Guideline 2K2.1 that accounts for the fact that firearms are stolen. Hence, Application Note 12 rightfully excludes the subsection (b)(4) enhancement only when defendants are as-

signed a base offense level under subsection (a)(7), i.e. only when a firearm is stolen and none of the aggravating factors is present.

Shepardson's base offense level assigned under subsection (a)(4)(B) penalizes him for two reasons: (i) being a prohibited person, and (ii) because the offense involved a firearm; the subsection (b)(4) enhancement, by contrast, adds two levels for a completely different reason—because the firearm was stolen. Because the enhancement and base offense level each penalize conceptually distinct notions related to sentencing, the addition of a subsection (b)(4) enhancement to a subsection (a)(4)(B) base offense level does not constitute double counting. This reading of Application Note 12 is bolstered by the change made in a 1995 amendment to the Guidelines.

Prior to 1995, Application Note 12 precluded the subsection (b)(4) enhancement whenever defendants were convicted of one of the same enumerated offenses, regardless of which base offense level defendant was assigned. It did not include the additional requirement that defendant also be sentenced under subsection (a)(7). *See* USSG App. C (amendment 522)[6]; *see also United States v. Luna*, 165 F.3d 316, 325 n. 43 (5th Cir.1999); *United States v. Armstead*, 114 F.3d 504, 509 (5th Cir.1997). Had Shepardson been sentenced under the 1994 version of the Guidelines, his double counting argument might have had merit. After the amendment, however, it is clear that sentencing courts may not disregard the subsection (b)(4) enhancement unless both conditions of Application Note 12 are satisfied.

The First, Ninth and Fifth Circuits have each affirmed the imposition of a subsection (b)(4) enhancement in the context of a violation of 18 U.S.C. § 922(j), the same offense at issue here. *See United States v. Brown*, 169 F.3d 89, 93 (1st Cir.1999); *United States v. Turnipseed*, 159 F.3d 383, 385–86 (9th Cir.1998); *United States v. Luna*, 165 F.3d 316, 323–25 (5th Cir.1999). In both *Brown* and *Turnipseed*, the First and Ninth Circuits rejected defendants' double counting arguments, relying on Application Note 12. Following *Turnipseed*, the *Brown* court reasoned that "for an individual convicted under § 922(j), if none of the aggravating factors [of the other base offense level assignments] applies, the sentencing court's application of ... subsection (a)(7) takes into account the stolen nature of the firearm." *See Brown*, 169 F.3d at 93.

In *Luna*, the Fifth Circuit dealt with a somewhat different argument, rebuffing defendant's claim that a subsection (b)(4) enhancement was inapplicable because the firearms were not "stolen" when he acquired them during the course of a burglary. *Id.* at 324. The *Luna* court held that the subsection (b)(4) enhancement was properly added because the term "stolen" did not refer exclusively to the preexisting condition of the firearm used in the offense. It read the enhancement to apply not only where a stolen firearm is used to facilitate a burglary, but also where a firearm is among the proceeds stolen during the commission of a burglary. *See id.* As such, "it is irrelevant whether the illegal possessor [of the stolen firearm] was also the thief." *Id.* at 326 (Dennis, J., concurring in the result as to the court's application of § 2K2.1(b)(4)); *but see United States v. Rowlett*, 23 F.3d 300, 304 (10th Cir.1994) (holding under the pre–1995 version of Application Note 12 that the subsection (b)(4) enhancement applies only when the firearm had already been stolen prior to the defendant's taking possession of it). This early Tenth Circuit decision is distinguishable since it was rendered prior to the amendment to Application Note 12.

---

**6.** The pre–1995 version of Application Note 12 read, in pertinent part: "If the defendant is convicted under 18 U.S.C. § 922[ ],(j) ... and is convicted of no other offense subject to this guideline, do not apply the adjustment in subsection (b)(4) because the base level itself takes such conduct into account." USSG § 2K2.1, comment. (n.12) (1994).

One other circuit has also recently weighed in on the applicability of a subsection (b)(4) enhancement where defendants are sentenced for stealing firearms during a burglary. *See United States v. Hawkins,* 181 F.3d 911, 912–13 (8th Cir.1999). In *Hawkins,* the Eighth Circuit affirmed a subsection (b)(4) enhancement where neither of the Application Note 12 criteria was met. The offense of conviction was not among those specifically enumerated in Application Note 12, and defendant's base offense level was not determined in accordance with subsection (a)(7). This Court therefore joins the other four circuits that have held the subsection (b)(4) enhancement permissible where the offense of conviction involves possession of stolen firearms.

### III. *Section 2K2.1(b)(5) Enhancement*

■ The district court imposed a four level enhancement pursuant to Section 2K2.1(b)(5) because each appellant possessed a firearm in connection with another felony. That provision of the Guidelines instructs: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels." USSG § 2K2.1(b)(5). The sentencing court found that the enhancement applied because some of the stolen firearms were subsequently exchanged for drugs. Appellants each claim that the court's findings were clearly erroneous.

Appellants claim that their sentences were improperly enhanced because the exchange for drugs of firearms stolen in the April 1995 Fairlee and Topsham burglaries was not sufficiently related to the offense of conviction. Relying on the relevant con-

duct factors provision of Section 1B1.3(a), appellants argue that the two prior burglaries, and concomitant trade of the guns from those burglaries for drugs, are too attenuated to support the enhancement to their offenses for the guns stolen in the third burglary.[7] Shepardson was convicted for the possession of firearms taken in the Corinth burglary some nineteen months after the drugs for guns exchange, and St. Don was convicted for possessing the sawed-off shotgun received from Shepardson as payment for the Corinth burglary.

Appellants do not contest that their sentences under Guideline 2K2.1 are subject to grouping. *See* USSG § 3D1.2(d) & comment. (n.6) ("firearms offenses, and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior are to be grouped together"). Nor do they dispute the sentencing court's consideration of acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2). Appellants only take exception to the district court's finding that the three burglaries constituted a common scheme or plan, or the same course of conduct, claiming that the prior burglaries were not relevant conduct, and therefore cannot support the enhancement. Essentially, appellants claim that the 1995 drugs-for-guns exchange was not "in connection with" their offenses of conviction. For assistance in interpreting this phrase, we must look beyond the Guidelines.

We have already had occasion to construe the phrase "in connection with" as used in subsection (b)(5). *See United States v. Spurgeon,* 117 F.3d 641, 643–44 (2d Cir.1997) (per curiam). In *Spurgeon,* this Court followed the consensus of five other circuits in holding that " 'in connec-

---

**7.** Appellants also invite us to reevaluate the resolution of factual disputes based on credibility determinations made by the sentencing court. Because a factfinder's choice between two permissible views of the evidence cannot

be clearly erroneous, and because it was permissible for the court to decide whose testimony to credit, we decline the invitation. *See Reed,* 88 F.3d at 180.

tion with' in USSG Section 2K2.1(b)(5) is the equivalent of 'in relation to' in 18 U.S.C. § 924(c)(1)." *Id.* at 644. We reasoned that "[b]ecause the Guidelines do not specifically define 'in connection with,' the phrase should be given its ordinary meaning." *Id.* We adopted the standard set out by the Seventh Circuit:

> So long as the government proves by a preponderance of the evidence that the firearm served some purpose with respect to the felonious conduct, section 2K2.1(b)(5)'s "in connection with" requirement is satisfied; conversely, where the firearm's presence is merely coincidental to that conduct, the requirement is not met.

*Id.* (citing *United States v. Wyatt,* 102 F.3d 241, 247 (7th Cir.1996)).

Two notes in the commentary to Guideline 2K2.1 further elucidate the key terms of the subsection (b)(5) enhancement. "Felony offense" is defined as "any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or a conviction obtained." USSG § 2K2.1, comment. (n.7). Application Note 18 further explains that "another felony offense" "refer[s] to offenses other than ... firearms possession." *Id.* at (n. 18). Elsewhere, the Guidelines define what constitutes the "same course of conduct" or "common scheme or plan" for purposes of assessing relevant conduct. "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi.*" USSG § 1B1.3, comment. (n.9). The "same course of conduct" standard requires us to be even more deferential because

[o]ffenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses.

*Id.*

Here, the sentencing court found that Shepardson and St. Don were accomplices in all three burglaries, which shared a similar modus operandi—breaking into camps—for the common purpose of stealing guns to buy drugs. Despite the nineteen-month interval, the court found these burglaries sufficiently similar to qualify as an ongoing series of offenses. After hearing live testimony from several witnesses, the sentencing court also found appellants' exchange of a shotgun and rifle for a pound of marijuana to be relevant conduct in sentencing.[8] These findings were not clearly erroneous.

■ As an alternative basis for affirming Shepardson's subsection (b)(5) enhancement, the government suggests that we adopt the holding of the Fifth Circuit that a subsection (b)(5) enhancement may be imposed where defendant's offense of conviction, possession of a stolen firearm, and his "other felony"—the burglary in which that firearm was stolen—occur simultaneously. *See United States v. Armstead,* 114 F.3d 504, 510–13 (5th Cir.1997). Though the offense of conviction clearly cannot be "another" felony, "[n]othing in the Guidelines suggests that contemporaneous crimes cannot be considered when enhancing a sentence." *Id.* at 513. As such, Shepardson's enhancement could be affirmed because the burglary—a separate "felony offense"—occurred "in connection with" his offense of conviction, possessing

---

8. Appellant St. Don also contested the amount of marijuana involved, claiming that it was less than an ounce, which is not enough to constitute a felony. St. Don's initial signed statement given to the authorities, however, stated that they traded the guns and other stolen property for "$60 and 1 pd. of weed." Despite St. Don's subsequent disavowal, the sentencing court resolved the conflicting testimony by crediting appellant's prior signed, written statement.

stolen firearms. We leave for another day a determination of the validity of this argument because the issue is not properly before us.[9]

For the foregoing reasons, the sentences are

Affirmed.

---

9. Appellants also seek review of the district court's decision not to depart downward. Because the sentencing court expressly acknowledged its authority to depart downward, we cannot review the court's refusal to exercise its discretion. *See United States v. Stephenson,* 183 F.3d 110, 119 (2d Cir.1999) (citing *United States v. Brown,* 98 F.3d 690, 692 (2d Cir.1996)).