UNITED STATES of America, Plaintiff,

v.

Michael G. VISNICH, Defendant.

No. 4:99CR156.

United States District Court, N.D. Ohio.

Aug. 10, 2000.

Edward G. Bryan, Office of Fed. Public Defender, Cleveland, OH, for Michael G. Visnich.

Michael G. Visnich, Warren, OH, pro se.

Albert A. Palombaro, Boardman, OH, for James A. Kerchum.

James A. Kerchum, Girard, OH, pro se.

Nancy Lee Kelley, Office of U.S. Atty., Cleveland, OH, for U.S.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon the Motion of the Defendant, Michael Visnich ("Visnich") to vacate his guilty plea and reconsider his motion to dismiss Count One of the superseding indictment (Dkt.# 110). On July 13, 1999, the Government filed a four count superseding indictment against the Defendant, and co-defendant James Kerchum. Visnich was charged in Count One with possession of firearms in violation of Section 922(g)(8), Title 18, United States Code, and, in Count Two, with receipt or possession of a fire-arm not registered to him in the National Firearms Registration and Transfer Record in violation of Section 5861(d), Title 26, United States Code. The Defendant unsuccessfully moved to dismiss Count One on several constitutional grounds, including a Commerce Clause challenge to the validity of 18 U.S.C. § 922(g) (Dkt.# 20). The Defendant now seeks to have this Court reconsider its denial of his Motion to Dismiss based upon the recent Supreme Court decision in *United States v. Morrison*, — U.S. —, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). The Defendant has also moved to vacate his guilty plea.

For the following reasons, the Defendant's Motion to Vacate Guilty Plea and Reconsider Motion to Dismiss Indictment (Dkt.# 110) are **DENIED**.

## FACTS

The facts of this case have been set forth in detail in this Court's previous Opinions (Dkt.# 44 & # 67). *See United States v. Visnich*, 65 F.Supp.2d 669 (N.D.Ohio 1999). Importantly, though, the Defendant pleaded guilty to Count One of the Superseding Indictment on December 2, 1999.

## ANALYSIS

The Defendant has asserted that his guilty plea should be vacated because 18 U.S.C § 922(g) is an unconstitutional exercise of Congress' power under the Commerce Clause in light of the Supreme Court's recent decision in *United States v. Morrison*, — U.S. —, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). Whether the guilty plea should be vacated depends on whether § 922(g) is unconstitutional. As such, the Court will first discuss the Defendant's renewed Commerce Clause argu-

ment and then determine whether the guilty plea shall be vacated.

## A. Reconsideration of the Defendant's Motion to Dismiss Indictment

■ This Court previously held that 18 U.S.C. § 922(g) is not an unconstitutional exercise of Congress' power under the Commerce Clause. The relevant portion of the Memorandum Opinion issued on the Defendant's initial Motion to Dismiss states:

> The Constitution grants Congress the power "to regulate Commerce with foreign Nations, and among the several states, and with the Indian Tribes." U.S. Const. Art. I, § 8, clause 3. The extent of this power with respect to the regulation of firearms in interstate commerce was tested in *U.S. v. Lopez.* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

> In striking down 18 U.S.C. § 922(q), the Gun Free School Zones Act, the Court in *Lopez* defined three areas in which Congress could constitutionally exercise its Commerce Clause power. The Court stated that first, "Congress may regulate the use of the channels of interstate commerce;" second, "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, even though the threat may come only from intrastate activities;" and third, "Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce." *Id.* at 558–59, 115 S.Ct. 1624. The Court held § 922(q) unconstitutional because it contained "no jurisdictional element which would ensure, through case by case inquiry, that the firearm possession in question affects interstate commerce." *Id.* at 561, 115 S.Ct. 1624. Section 922(g), unlike § 922(q), contains the requisite jurisdictional element and establishes the necessary connection between possessing firearms and ammunition in violation of a

domestic relations restraining order and interstate commerce.

The Fifth Circuit in *U.S. v. Pierson,* 139 F.3d 501 (5th Cir.1998), persuasively explained the connection between possession of a firearm while under a domestic violence restraining order and interstate commerce. Section 922(g)(8) clearly proscribes individuals under a domestic relations restraining order from "ship[ping] or transport[ing] in interstate or foreign commerce, or possess[ing] in or affecting commerce, any firearm or ammunition" or "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(8). The Fifth Circuit reasoned that, "by expressly requiring a nexus between the illegal firearm and interstate commerce, Congress has exercised its delegated power under the Commerce Clause to reach 'a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce.'" *Pierson,* 139 F.3d at 503 *(citing Lopez,* 514 U.S. at 561–63, 115 S.Ct. 1624.) *See also U.S. v. Wilson,* 159 F.3d 280, 286 (7th Cir.1998) ("We agree with [the reasoning in *Pierson* ], and we similarly find that the jurisdictional element contained in § 922(g) establishes the requisite nexus with interstate commerce.") Thus, the presence of the jurisdictional element in § 922(g) satisfies the requirement that a connection must exist between the conduct regulated and interstate commerce.

Additionally, the nexus between the regulated conduct and interstate commerce must only be minimal to satisfy the jurisdictional requirement of *Lopez.* The Sixth Circuit in *United States v. Chesney,* 86 F.3d 564 (1996), held that *Lopez* "did not disturb the Supreme Court's precedents which indicate that a firearm that has been transported at any time in interstate commerce has a sufficient effect on commerce to allow Congress to regulate the possession of that firearm pursuant to its Commerce

Clause powers." *Id.* at 570–71, 115 S.Ct. 1624. The Sixth Circuit further stated that "a firearm moved in interstate commerce at any time is sufficient to meet the government's burden of proving the 'in commerce or affecting commerce' element of … § 922(g)." *Id.* at 571, 115 S.Ct. 1624 *(citing Scarborough v. United States,* 431 U.S. 563, 566–67, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977).) *See also Wilson,* 159 F.3d at 286–87; *Pierson,* 139 F.3d at 503–504. So long as the weapons in Defendant's possession were moved in interstate commerce at some time, the minimal nexus between his possession and interstate commerce can be established. The government does not need to prove anything more than mere movement of the firearms and ammunition in interstate commerce to meet its burden of proof on the jurisdictional element of § 922(g). 65 F.Supp.2d at 671–72. The Supreme Court's opinion in *Morrison* does not change this analysis.

In *Morrison,* the Supreme Court recapitulated its decision in *Lopez,* and held that the civil remedy provision of the Violence Against Women Act ("VAWA"), 42 U.S.C. § 13981, which authorizes a cause of action against a person who commits gender-motivated violence, was an unconstitutional exercise of Congress' power under the Commerce Clause.[1] The Court reasoned that "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity." *Morrison,* 120 S.Ct. at 1751. Although *Morrison,* does not establish a new constitutional framework nor

modify *Lopez*'s analysis of the Commerce Clause, *Morrison does* place more emphasis on the nexus between the regulated activity and interstate commerce.

The Court in *Morrison* summarized four "significant considerations" which contributed to the *Lopez* decision. *Id.* at 1749. First, the Court in *Lopez* considered that the Gun Free School Zones Act, 18 U.S.C. 922(q), was "a criminal statute that by its terms has nothing to do with commerce or any sort of economic enterprise, however broadly one might define those terms." *Id.* at 1749–50 *(quoting Lopez,* 514 U.S. at 561, 115 S.Ct. 1624). In *Morrison,* the Court rejected "the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce."[2] *Morrison,* 120 S.Ct. at 1754. Importantly, the Court reasoned that "[t]he Constitution requires a distinction between what is truly national and what is truly local." *Id.* "The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States."[3] *Id.*

Second, the Court considered the lack of an "express jurisdictional element which might limit [the statute's] reach to a discrete set of firearm possessions that have an explicit connection with or effect on interstate commerce." *Morrison,* 120 S.Ct. at 1750–51. Section 13981 lacked an express jurisdictional element, and thus suffered from the same fatal flaw as the

---

**1.** The provision of VAWA in question was invoked by a female college student at Virginia Tech in a civil lawsuit against two football players at the university who allegedly raped her. The female college student, Christy Brzonkala sued Antonio Morrison and James Crawford under 42 U.S.C. § 13981. In the same lawsuit, Brzonkala also sued Virginia Tech under Title IX of the Education Amendments of 1972, 86 Stat. 373–375, 20 U.S.C. § 1681–1688.

**2.** Nonetheless, the Court noted that "we need not adopt a categorical rule against aggregat-

ing the effects of any noneconomic activity …, thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature." *Id.* at 1751.

**3.** However, the Court noted that they have "upheld a wide variety of congressional Acts regulating intrastate economic activity where we have concluded that the activity substantially affected interstate commerce." *Id.* at 1750 *(citing Lopez,* 514 U.S. at 559, 115 S.Ct. 1624).

Gun Free School Zones Act. *See id.* at 1751. The Court reasoned that "[a]lthough *Lopez* makes clear that such a jurisdictional element would lend support to the argument that § 13981 is sufficiently tied to interstate commerce, Congress elected to cast § 13981's remedy over a wider, more purely intrastate, body of violent crime." *Id.* at 1751–52. Such broad regulation of intrastate conduct, without more, is an unconstitutional exercise of Congress' Commerce Clause powers.

Two other considerations for the Court were: (1) the existence of "express congressional findings regarding the effects upon interstate commerce of [the regulated conduct or activity];" and (2) the link between the regulated conduct and interstate commerce. *Id.* at 1751. Although there were express congressional findings regarding the substantial affect of gender-motivated violence on interstate commerce, the Court found the link too attenuated. *Id.* at 1752–53. In *Morrison,* the Court rejected the same "costs of crime," and "national productivity" arguments asserted by the United States in *Lopez,* reasoning that based upon such arguments Congress could " 'regulate not only all violent crime, but all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce.' " *Id.* at 1751, 1752–53 (*quoting Lopez,* 514 U.S. at 564, 115 S.Ct. 1624). In so doing, the Court focused more on the actuality of the relationship between the regulated activity and interstate commerce, and less on the legislatively-stated link between the two.[4] This is neither a change nor a modification in Commerce Clause jurisprudence, but merely a change in emphasis on one of the several factors the Court considers in evaluating legislation based upon Congress' Commerce Clause powers.[5] It is within this analytical framework that the Court will consider the constitutionality of § 922(g)(8).

Section 922(g)'s jurisdictional language applies to each of its nine subsections. The relevant language of § 922(g) is as follows:

> It shall be unlawful for any person ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The Sixth Circuit has already held that subsection one of § 922(g) is constitutional.[6] *See United States v. Turner,* 77 F.3d 887 (6th Cir.1996); *United States v. Chesney,* 86 F.3d 564 (6th Cir.1996). Both § 922(g)(1) and § 922(g)(8) share the same jurisdictional language. Therefore, the Sixth Circuit's reasoning with respect to § 922(g)(1) applies equally to § 922(g)(8). In *Turner,* the Court rejected the Defendant–Appellant's argument that "the requisite element of 'in or affecting commerce' is insufficient to fall within the rule of *Lopez." Turner,* 77 F.3d at 889. The Sixth Circuit found that "[e]very court of appeals that has been faced with this question since *Lopez* has held that the jurisdictional element of § 922(g) provides the requisite nexus with interstate commerce that [the Gun Free School Zones Act] lacked." *Id.* (Citing cases.) Furthermore, "[r]equiring the government in each case to prove that a felon has possessed a firearm 'in or affecting commerce' ensures

---

4. Congress stated in § 13981(a) that "it is the purpose of this part to protect the civil rights of victims of gender motivated violence and to promote public safety, health, and activities affecting interstate commerce by establishing a Federal civil rights cause of action for victims of crimes of violence motivated by gender."

5. Given the Supreme Court's shift in emphasis to the requirement of a substantial nexus between the regulated activity and interstate commerce, this Court will not consider the legislative history of § 922(g)(8).

6. Section 922(g)(1) prohibits the possession of firearms by persons who "[have] been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."

that the firearm possession in question affects interstate commerce and saves § 922(g) from the jurisdictional defect that doomed [the Gun Free School Zones Act]." *Id.* Section 922(g)(8) contains an express jurisdictional element which requires the Government to prove beyond a reasonable doubt that the firearms in the Defendant's possession moved in interstate commerce. Therefore, § 922(g)(8) satisfies the jurisdictional element requirement of *Lopez*.[7]

■ The Defendant, however, urges this Court to look beyond the mere presence of a jurisdictional element and inquire more thoroughly into the actuality of the nexus between firearm possession and interstate commerce. As this Court noted in its previous opinion, the Sixth Circuit in *Chesney* held that "*Lopez* ... did not disturb the Supreme Court's precedents which indicate that a firearm that has been transported at any time in interstate commerce has a sufficient effect on commerce to allow Congress to regulate the possession of that firearm pursuant to its Commerce Clause powers." *Visnich*, 65 F.Supp.2d at 671–72 (*citing Chesney*, 86 F.3d at 570–71). Even Justice Souter, in his dissent in *Morrison*, also emphasized that the Court reaffirmed "Congress' well-established and frequently exercised power to enact laws that satisfy a commerce-related jurisdictional prerequisite—for example, that some item relevant to the federally regulated activity has at some time crossed a state line."[8] 120 S.Ct. at 1775 (*citing*

*Morrison, supra,* at 1749–50, 1751, 1752, and n. 5; *Lopez, supra* at 558, 115 S.Ct. 1624; *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 256, 85 S.Ct. 348, 13 L.Ed.2d 258). As such, the act of possession of a firearm that has moved in interstate commerce can be regulated by Congress pursuant to its Commerce Clause power.

The Defendant, however, asserts that possession of firearms is intrastate non-economic criminal activity that has no relation to interstate commerce. The Court disagrees. Possession of firearms occurs before and after they move in interstate commerce. Congress, in enacting § 922(g)(8), sought to prevent the interstate movement of firearms to, and by, persons subject to domestic violence restraining orders. Absent a prohibition of possession as part of a larger statutory scheme, Congress could not regulate interstate commerce in firearms to, and by, such persons.[9] *See Chesney*, 86 F.3d at 571–72. Accordingly, despite the fact that possession of a firearm is an intrastate non-economic act, it is the conduct which is inextricably and substantially linked to interstate commerce and which can be regulated by Congress pursuant to its Commerce Clause powers.[10]

The Defendant further argues that Congress intruded upon the realm of domestic relations, which has been left to the States, in enacting § 922(g)(8). This argument

7. In this regard, the distinction between 18 U.S.C. § 922(g) and 42 U.S.C. § 13981 is clear. Section 13981 contained no jurisdictional element and required no proof that the intrastate non-economic conduct affected interstate commerce. Unlike § 922(g)(8), there was absolutely no link between the conduct for which § 13981 provided a civil remedy and interstate commerce.

8. Justice Souter additionally quoted *Caminetti v. United States,* 242 U.S. 470, 491, 37 S.Ct. 192, 61 L.Ed. 442 (1917) (" '[T]he authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question.' "); and cited *United States v. Bass,* 404 U.S. 336, 347–50, 92 S.Ct.

515, 30 L.Ed.2d 488 (1971) ("saving ambiguous felon-in-possession statute by requiring gun to have crossed state line) and *Scarborough v. United States,* 431 U.S. at 575, 97 S.Ct. 1963 ("interpreting same statute to require only that gun passed 'in interstate commerce' 'at some time,' without questioning constitutionality") as examples of Congress' constitutionally permissible exercise of its Commerce Clause powers.

9. Recall that in addition to prohibiting possession of a firearm, § 922(g) also prohibits transportation, shipment, and receipt of firearms in or affecting interstate commerce.

10. *See* footnote 3, *supra.*

was raised by the Defendant in his original Motion to Dismiss and raises a Tenth Amendment issue. *See Visnich*, 65 F.Supp.2d at 672–73. Without engaging in an in-depth analysis of Tenth Amendment jurisprudence, the Court hereby incorporates its analysis of the issue set forth in *United States v. Visnich*, 65 F.Supp.2d 669, and finds that the Defendant's contention is without merit.

**B. The Defendant's Motion to Vacate Guilty Plea**

Because the Court has determined that 18 U.S.C. § 922(g)(8) is constitutional, the Defendant shall not be permitted to withdraw his plea of guilty.

## CONCLUSION

Accordingly, this Court is satisfied that a substantial nexus exists between the intrastate conduct of firearm possession and the movement of firearms in interstate commerce which Congress has the power to regulate under the Commerce Clause. The Defendant's argument that § 922(g)(8) is an unconstitutional exercise of Congress' power under the Commerce Clause, even in light of *Morrison*, is without merit. As such, the Court need not consider the merits of the Defendant's motion to withdraw his guilty plea.

The Defendant's Motion to Vacate Guilty Plea and Reconsider Motion to Dismiss Indictment (Dkt.# 110) are hereby **DENIED.**

**IT IS SO ORDERED.**